Crichton vs. Crichton.

Crichton, Appellant, vs. Crichton, Respondent.

*November 13 — December 4, 1888.*

DIVORCE. *(1, 2) Cruelty: Drunkenness: Evidence. (3) Condonation: Revival of injuries. (4) Appeal to S. C.: Alimony.*

1. The testimony on behalf of the plaintiff in this case — tending to show, among other things, that the defendant is an habitual drunkard, and, when intoxicated, is violent, profane, and grossly inde-

Crichton vs. Crichton.

cent in his language and conduct; that he has frequently applied vile epithets to his wife and their daughters, and has threatened to kill her and them; and that on several occasions he has pushed her about in anger, handling her roughly — is *held*, if true, to show a case of cruel and inhuman treatment, within the meaning of subd. 5, sec. 2356, R. S.

2. Though the testimony of the parties is in conflict, and there is corroborating testimony on each side, the unimpeached testimony of the three children of the parties in support of the allegations of cruelty and habitual drunkenness is *held* to create such a clear preponderance of evidence against the findings of the trial court that its judgment denying a divorce is reversed.

3. After condonation, former injuries will be revived by subsequent similar misconduct.

4. Questions of allowances, alimony, or division of estate, will not be considered by this court until they have been passed upon by the trial court.

APPEAL from the Circuit Court for *Rock* County.

The facts are sufficiently stated in the opinion.

*William Street*, for the appellant, to the point that mental suffering, cruel and wicked words, and threats of personal violence are a sufficient cause for divorce within the meaning of our statute, and that actual personal violence need not be shown, cited *Freeman v. Freeman*, 31 Wis. 235, 248–50; *Pillar v. Pillar*, 22 id. 658; *Wheeler v. Wheeler*, 53 Iowa, 511; *Warner v. Warner*, 54 Mich. 492; *Berryman v. Berryman*, 59 id. 605; *Whitmore v. Whitmore*, 49 id. 417; *Sackrider v. Sackrider*, 60 Iowa, 397; *Friend v. Friend*, 53 Mich. 543; *Kelly v. Kelly*, 18 Nev. 49; *Carpenter v. Carpenter*, 30 Kan. 712; *Avery v. Avery*, 33 id. 1; *Eggarth v. Eggarth*, 16 Pac. Rep. (Ore.), 650; *Sylvis v. Sylvis*, 17 id. (Col.), 912; *Palmer v. Palmer*, 45 Mich. 150; *Whitacre v. Whitacre*, 31 N. W. Rep. (Mich.), 327; *Williams v. Williams*, 67 Tex. 198; *Wagner v. Wagner*, 34 Minn. 441; *Lyle v. Lyle*, 86 Tenn. 372.

For the respondent there was a brief by *Winans & Hyzer*, and oral argument by *John Winans*.

LYON, J. The action is for a divorce brought by the plaintiff against the defendant, her husband. The alleged grounds for the divorce are cruel and inhuman treatment and habitual drunkenness. This appeal is taken by the plaintiff from a judgment of the circuit court denying the divorce. The question to be determined is whether either of the alleged grounds is established by the proofs.

The principal witnesses who testified on behalf of the plaintiff are herself and three adult children of the parties, two daughters and a son. These are the only surviving children of the marriage. The parties were married in 1856, and have resided in Rock county ever since. The testimony of the plaintiff and of the three children of the parties is to the effect that the defendant is, and has been for several years past, an habitual drunkard, and that when intoxicated he is violent, profane, and grossly indecent in his language and conduct; that at numerous times during the past few years he has called his wife a bitch and a whore, accusing her, without any apparent grounds therefor, of having had illicit sexual intercourse with several men, using at the same time very profane language, and has also many times in her presence applied the same vile epithets to their daughters; that during those years he has frequently threatened to take the life of his wife; that once, when intoxicated, he was so violent that his wife was compelled to leave their room, going to the room of their daughters, where he followed her, broke open the door, and brandished a butcher-knife, threatening to kill her, and asking her to kill him with it; that on one occasion a drunken fellow was stopping at their house, the wife was in bed upstairs, and he told the fellow to go up there, and used language which conveyed to his wife and children the idea that he desired him to go to bed with her, saying that the old woman was good enough for him; one of the daughters met the fellow at the top of the stairs, and compelled him

to return; that a short time before she left her husband. which was in July, 1885, he pointed a pistol at their son, in her presence, and menaced him with death; that on several occasions he pushed her about in anger, handling her roughly, the last time shortly before she left him; in short, that his conduct towards his wife was so outrageously brutal and inhuman that it became impossible for her longer to live with him as his wife.

The foregoing is but an outline of the testimony of the wife and children, but the statement is sufficient to show the manner in which, as they testified, he habitually treated her. Some other testimony was given on the trial by other witnesses in behalf of the plaintiff, which tends to corroborate some of the statements of herself and children. It is not necessary to state here this corroborating testimony.

If the testimony of the plaintiff and the three children of the parties is true, it proves a case of cruel and inhuman treatment of the plaintiff by her husband, within the meaning of the statute. R. S. sec. 2356, subd. 5. This is so within the somewhat restricted rule of *Johnson v. Johnson*, 4 Wis. 135; for surely the conduct of the defendant, as testified to by his wife and children, rendered it unsafe and improper for his wife to live and cohabit with him. This is the test of the statutory offense laid down in that case. A broader rule (and in my opinion the better rule) on the subject is laid down in *Freeman v. Freeman*, 31 Wis. 235, by Dixon, C. J. It is there said: "Everybody knows that the conduct of the husband towards the wife may be such, even without any personal violence, actual or threatened, as to render her marriage state intolerable, and, from mere mental suffering and physical debility so produced, to make it utterly impossible for her to perform the duties which are expected of a wife, and which otherwise she would be able and anxious to perform." In more homely language it has been said elsewhere that there are many ways by

which a cruel and brutal husband may break his wife's heart and make her life a burden to her, without breaking her head or committing any actual personal violence upon her. The turpitude of the husband and the anguish of the wife may be as great in one case as in the other; and so the statute makes it ground for a divorce whether the cruel and inhuman treatment be practiced by using personal violence *or by any other means.* The same testimony, if true, also makes a case of habitual drunkenness.

The defendant testified in his own behalf and denied most of the statements relating to his abuse of his wife and his drunkenness, testified to by her and their children. He also introduced some corroborating testimony of a general character, to the effect that the witnesses, who were his neighbors, had not seen him intoxicated many times, and were not cognizant of the alleged ill treatment of his wife. Yet there is much in the testimony of the defendant's witnesses, and some statements in his own, which tend to some extent to corroborate the testimony of the plaintiff and her witnesses. Indeed, the drift of the testimony of defendant's witnesses is to palliate his conduct and soften the plaintiff's grievances, rather than to controvert the statements of herself and children.

And here it may be observed that the members of defendant's family had much better means than other persons had of knowing the relations between the parties and the defendant's conduct towards his wife. Cruelty to a wife is, no doubt, usually practiced in the privacy of home, where no outside witnesses are present; frequently by husbands whose manners in their intercourse with the public are gentle and unexceptionable. He can crush the very life out of a helpless and confiding wife, but shrinks from appearing before the world in his true character. This is the moral cowardice of brutality, and is usually accompanied by physical cowardice as well.

The plaintiff and her children testified to a plain, straightforward history of the married life of the parties, and to numerous instances of wrong and outrage on the part of the defendant towards his wife, running through a series of years, until she left him in July, 1885, and there is no material discrepancy in their statements. A perusal of this testimony leaves a strong conviction upon our minds that it is true, and a careful examination of the testimony of the defendant and his witnesses fails to shake that conviction. If we assume that the parties are equally credible, and hence that the testimony of the defendant offsets that of the plaintiff, and also that the corroborating testimony on each side balances that on the other side (which assumptions are very favorable to the defendant), we have the unimpeached testimony of the three children in support of the allegations of cruelty and habitual drunkenness on the part of the defendant. It is quite true that the learned circuit judge had the advantage of seeing those witnesses and hearing them testify, but we cannot conceive how this fact can possibly justify a total disregard of the testimony of the children. Our conclusion is that there is a clear and satisfactory preponderance of evidence in favor of the plaintiff, and that the findings of fact upon which the judgment rests, and the judgment, should not be upheld. We are always reluctant to disturb a judgment based on mere propositions of fact, but in this case we feel compelled to do so.

It appeared on the trial that some six or seven years before the trial the plaintiff left the defendant because of his cruelty and abuse, but that after a short absence, at his urgent solicitation and promises to do better, she returned to their home. In view of this fact, something was said on the argument about a condonation of all previous wrongs on his part. Condonation is not absolute, but only conditional, forgiveness. "It is subject to the implied condition

that the injury shall not be repeated and that the other party shall thereafter be treated with conjugal kindness." *Phillips v. Phillips*, 27 Wis. 252. After condonation, former injuries will be revived by subsequent similar misconduct, although of a slighter nature. In the present case, the misconduct of the defendant after his wife returned to him was even greater and worse than before she left him. Hence, in determining the question of divorce, the court should consider all of the cruel and inhuman acts of the defendant established by the proofs, as well those committed before she returned to him as afterwards.

We cannot on this appeal consider the questions of allowances, alimony, or division of estate. These must first be determined by the circuit court.

The judgment of the circuit court must be reversed. The defendant must be charged with the taxable costs in this court. The cause will be remanded with directions to the circuit court to grant a divorce from the bonds of matrimony and to direct the payment by the defendant to the plaintiff of proper allowances, including reasonable attorney's fees for taking this appeal and arguing the same in this court; also of reasonable alimony, to be fixed by the court, or, in lieu of alimony, a division of the defendant's estate between the parties, in the discretion of the court.

*By the Court.*— Ordered accordingly.