Cudahy, Respondent, vs. Cudahy, Appellant.

*November 7, 1934—March 5, 1935.*

For the appellant there were briefs by *Gold & McCann* of Milwaukee, and oral argument by *Ray T. McCann.*

For the respondent there was a brief by *Fawsett & Shea* and *James D. Shaw,* all of Milwaukee, and oral argument by *Mr. Edmund B. Shea* and *Mr. Shaw.*

The following opinion was filed January 8, 1935:

WICKHEM, J.    The grounds upon which a divorce was awarded in this case were cruel and inhuman treatment of

the plaintiff by defendant by means other than personal violence. The two principal questions upon this appeal are: (1) Whether the findings sustain the conclusions of the trial court that plaintiff is entitled to a divorce; and (2) whether the evidence sustains the trial court's award of the custody of the minor child to the plaintiff. The defendant also contends that the allowance of alimony is inadequate, as well as the allowance for counsel fees and disbursements in the defense of the action in the trial court and upon appeal.

It is apparent from the nature of the questions involved that the function of this court is almost solely to examine the evidence for the purpose of ascertaining whether the findings of the trial court are sustained by the evidence. Some notion of the difficulties which this entails may be had when it is said that this court is faced with a record of more than three thousand pages, a printed case of upwards of nine hundred pages, and with briefs totaling nearly five hundred pages. It is extremely difficult adequately to discuss the facts within the compass of a useful judicial opinion.

A vigorous attack has been made upon the findings of the trial court that defendant was guilty of cruel and inhuman treatment toward the plaintiff. Defendant contends that the evidence purporting to sustain them is indefinite as to the time or duration of the conduct, and that the acts charged are qualitatively trivial and of so little consequence that they cannot be considered to constitute cruelty. On the other hand, plaintiff argues that while the conduct complained of was trivial and unimportant if each instance be isolated and considered alone, it shows a pattern of conduct which throws light upon the character of defendant as an egotistical, opinionated, nagging woman, with no regard for her husband, holding him and his relatives as well as his ancestry and religion in contempt, and evidencing this by a continuous succession of irritating conduct. A careful examination of the record convinces us that there is evidence to support the findings of the trial court, and that the findings are not against

the great weight of the evidence. *Klaus v. Klaus,* 162 Wis. 549, 156 N. W. 963; *Banks v. Banks,* 162 Wis. 87, 155 N. W. 916. No useful purpose will be served by setting forth in detail the evidence upon which the findings are based. The reputation of the parties will not be enhanced, nor will their chances of future happiness be increased, by embalming the details of this family tragedy in the Reports of this court. That the evidence might also sustain contrary findings, while debatable, is, of course, immaterial.

It is also contended that there was condonation in this case. The principal ground for this contention is that in January, 1929, after the happening of many of the instances relied upon as grounds for divorce, plaintiff took trips to Bermuda and Vancouver with defendant; that in July and August he wrote letters expressing affection; that a few days before he left her in August, 1929, he had marital relations with her; that on Thanksgiving Day, 1929, he invited her and their son to be his dinner guests; that on Christmas Day, 1931, he kissed her at his sister's home; that he bought her a new car, and sent her a kindly telegram in November, 1931. The trial court found that the claim that marital relations had been resumed by the parties in August, 1929, was not true. The other actions on plaintiff's part were undisputed, and form the basis for the contention of condonation. There is no evidence of actual marital relations during the Vancouver or Bermuda trips, but defendant relies upon the presumption that such relations occurred. While cruel and inhuman treatment may be condoned, there is quite a difference between cruel and inhuman treatment consisting of a long succession of relatively trivial incidents, the whole pattern of which may constitute a ground for divorce, and single acts such as adultery or assault which, taken alone, may constitute grounds for divorce. By hypothesis, the conduct of defendant would not in any of its single instances constitute a ground for divorce. It was the continuity and the persistence of this con-

duct that ultimately gave plaintiff a cause of action. If marital intercourse or continued living together is to be treated as condonation, then a spouse who hopes for improvement in conduct, and continues marital relations in the hope that things may eventually straighten out, is, by the very act of tolerance, barred from securing a divorce. On the other hand, should the spouse, after one or two instances of such conduct, sue for divorce, he or she would be met with the argument that one or two instances of this sort do not constitute grounds for divorce. The doctrine of condonation was not intended to create such a dilemma. It has no application here. Even if it did have, it would be a conditional forgiveness and subject to the implied condition that the conduct shall not be repeated and that the cause of action shall be revived by conduct much slighter than that which preceded it. *Crichton v. Crichton,* 73 Wis. 59, 40 N. W. 638; *Hickman v. Hickman,* 188 Iowa, 697, 176 N. W. 698, 14 A. L. R. 929; *Phillips v. Phillips,* 27 Wis. 252; *Edleman v. Edleman,* 125 Wis. 270, 104 N. W. 56; *Weichers v. Weichers,* 197 Wis. 159, 221 N. W. 733.

It being concluded that there is no merit in the contention that plaintiff is not entitled to the divorce, the next question is whether the court properly awarded the primary custody of the child to plaintiff. The evidence as to plaintiff's influence on the child, and his qualifications to direct the growth and development of the child, was all favorable to him. As to the mother, the evidence is conflicting. There was no contention that the mother is not of good moral character. The record bears strong evidence of her love for the child and of his love for her as well as for the father. There is much favorable testimony as to her attentiveness and devotion to the child. On the other hand, there is evidence that defendant's temperament as well as her insistence upon regulating every detail of the child's conduct and life, are not beneficial to the child; that they tend to kill the child's initiative, to deprive

him of confidence in himself, and to throw him out of adjustment nervously. It is evident that in such a situation no court can repair the harm to the child that has come from the shipwreck of this marriage. He will go through his adolescence, passed from plaintiff to defendant, and torn between his affection for each. This part of the tragedy is an accomplished fact. A court can only take such action as in its judgment will be for the child's best interests. Taking into consideration expert evidence that a boy of eight has more need of his father than of his mother, considering the size and age of the child and the temperaments of the parties, and in spite of the affection of this mother for her child and her good moral character, the conclusion of the trial court that the interests of the child will best be served by giving the primary custody to plaintiff, must be approved.

It is defendant's next contention that the allowance of permanent alimony to defendant is inadequate. This sum the court fixed at $1,200 per month, and aggregates $14,400 per year. The contention that this sum is inadequate is based upon a showing that the average annual income of plaintiff for the past five years approximates $180,000, and that a sum equal to about one-twelfth of the annual income of the husband is clearly inadequate. Prior to the separation, and during the period when defendant was running the household of plaintiff, her allowance was $2,500 a month. The allowance, after separation and prior to the commencement of the action, was $2,000 a month. Temporary alimony was allowed at $1,500 a month. It is evident that the sum allowed by the court is not disproportionate to that which defendant enjoyed when the parties were living together and she was sustaining the full expense of the household. She had no part in the accumulation of plaintiff's estate, and there is no showing that the sum of $14,400 a year will not maintain her in her station in life with entire adequacy. While a substantially higher alimony could have been sustained, we think the

allowance was proper, especially in view of the finding that defendant was at fault. As in the case of division of estate, this is not a problem in fractions. *Steinbach v. Steinbach,* 200 Wis. 208, 227 N. W. 879.

The next question raised is as to attorneys' fees and disbursements. The court allowed defendant the sum of $8,500 attorneys' fees and $3,000 for disbursements for the trial in the circuit court. It is contended that this allowance is inadequate. There was testimony on behalf of defendant that the services of her attorneys were reasonably worth $30,000. A former attorney, most of whose services were rendered prior to the commencement of this action, had submitted a bill for $3,000. The total claims for disbursements were $5,797.76. The court concluded that a considerable part of the services rendered by defendant's present attorneys, as well as certain of the disbursements and expenses incurred, went beyond the bounds of reasonable necessity. It was also the view of the court that it was necessary not merely to determine the reasonable value of the services rendered by defendant's attorneys and also their necessity, but also to ascertain the amount which it is equitable that plaintiff bear of these expenses. The court had in mind all of the matters properly to be considered. Defendant is under no circumstances to be allowed a sum greater than that reasonably necessary for the defense of the action. *Williams v. Williams,* 29 Wis. 517; *Schulz v. Schulz,* 128 Wis. 28, 107 N. W. 302. It is also the rule that the court in its discretion may consider the relative financial condition of the parties and decline to charge the husband with the expenses of her action or defense when, due to her financial condition or his, such a charge would be inequitable. See note 35 A. L. R. 1099; *Von Trott v. Von Trott,* 118 Wis. 29, 94 N. W. 798. However, in this case we see no reason why plaintiff should not bear the expenses reasonably necessary to defendant's defense of the action. This was a closely contested case, and there is nothing to indicate that

the defense of the action was not in good faith. The defendant has only the sum of $8,000 or $10,000 which she has saved out of her allowance. Plaintiff is worth several millions, and has an extremely large income. The scope of this action was for the most part beyond defendant's control. Having in mind the great disproportion between the estates of the parties, and the circumstance that the length and expensive character of the trial were largely out of defendant's control, plaintiff should be compelled to pay the reasonable value of such attorneys' fees as were necessarily sustained in the course of her defense. It is considered that the reasonable value of the services necessary to the defense of the action was $12,500, and that that sum should be allowed the defendant in lieu of $8,500, and the judgment should be modified accordingly. As to the expenses, the court allowed $3,000 of a bill totaling $5,797.76. An examination of the disbursements in detail would indicate that the court disallowed expenses incurred for a trip to Liverpool by one of defendant's counsel for the purpose of cross-examining a witness whose deposition was taken on plaintiff's behalf, and that the court also rejected a bill for expense incurred for daily transcript of the testimony taken on the trial of the action. The court also eliminated an expenditure for accountant's fees in investigating the financial condition of the plaintiff. The conclusion of the trial court that the expenses for the Liverpool trip and the accountant's fees were unnecessarily incurred must be sustained. However, we cannot agree with the conclusion of the trial court disallowing expense incurred by reason of the daily transcript. It seems to us that, in view of the character of the trial, defendant would have operated under a heavy handicap without a daily transcript, especially in view of the fact that plaintiff found it necessary, or at least advisable, to have one. It is the view of this court that the expense bill of the defendant should be reduced by the sums which represent expenditures for the

Liverpool trip and for accountant's fees, but that she should be allowed the expense incurred with reference to the transcript. It is not entirely clear from an examination of the expense account that this would materially affect the result, but, if it does, defendant should have the benefit.

Numerous other contentions are made by defendant, but a detailed discussion of them would unduly extend this opinion without performing a corresponding judicial service. We have carefully examined them and discover no prejudicial error.

*By the Court.*—Order of June 16, 1934, affirmed. Judgment affirmed in so far as it grants plaintiff a divorce, awards custody of the minor child to plaintiff, and alimony to defendant. Judgment reversed in so far as it provides for allowance to defendant for attorneys' fees and expenses, and cause remanded with directions to enter judgment as indicated in the opinion.

A motion for a rehearing was denied, without costs, on March 5, 1935.