GORDON, Respondent, vs. GORDON, Appellant.

*May 31—June 28, 1955.*

For the appellant there was a brief by *Spohn, Ross, Stevens, Lamb & Pick,* attorneys, and *Frank A. Ross, Jr.,* of counsel, all of Madison, and oral argument by *Frank A. Ross* and *Frank A. Ross, Jr.*

For the respondent there was a brief by *McDonald & MacDonald* of Madison, and oral argument by *James J. McDonald* and *James B. MacDonald.*

STEINLE, J. There was a sharp conflict in the evidence respecting the conduct of the husband and wife toward each other and toward the children. The evidence relating to the income of the husband and as to the valuation of the property was in dispute. The action was vigorously contested. More than fifteen days were spent in trial. The testimony was voluminous.

The appeal is based on contentions that the evidence does not support the court's findings of cruel and inhuman treatment practiced by the wife toward the husband; that the evidence shows condonation by the husband of the wife's conduct; that the evidence shows a course of conduct by the husband toward the wife which constituted cruel and inhuman treatment, and that mutual recrimination ought to have been found; that the court's disposition of property matters, alimony, and attorney fees was not justified by the evidence. The defendant also maintains that the court ought to have granted her motion for a new trial based upon proof presented by her of association between the husband and another woman; and that the court ought to have granted her motion for a review and modification of the judgment and a vacation of the judgment. The defendant challenges the

court's disposition of the motion for temporary alimony, attorney fees, and suit money pending appeal. Error is also claimed with respect to the court's striking of certain testimony presented by the wife at the trial, and further as to divergence in the court's written decision and its findings of fact with respect to the time when the wife was to remove her personal property from the home.

In its findings of fact the court determined that the parties are fifty-one years of age, were married in 1926, and have three children, a son born in 1931, a son born in 1935, and a daughter born in 1939. The husband is an osteopathic physician and surgeon who has enjoyed an extensive practice in Madison over a period of years. The wife is a university graduate. Both are in apparent good health and both are capable of earning their own livelihood. They own real estate in Madison consisting of a home valued at $36,500; a commercial and apartment building which, with fixtures and furnishings, is valued at $67,000; and an office building valued at $26,500. The real estate is mortgaged for an amount of approximately $30,000. The household furniture is valued at $6,200. Other furniture in the husband's office and apartment building is valued at $3,450. Additional assets include cash surrender value of the husband's life insurance, $16,283; accounts receivable, $800; insurance claim, $1,136; two automobiles, several horses, and miscellaneous property, $3,000. Liabilities in addition to the real-estate mortgage consist of unsecured bank loans totaling approximately $18,000. The court computed the husband's net worth at $112,000, virtually all of which was accumulated during the married life of the parties. The wife has a separate estate valued at approximately $23,000 which consists of some shares of stock and an inherited one-third interest in a farm in Minnesota. The court found also that there are liabilities contracted by the husband after the action was commenced which were incurred under unusual circumstances, and which

were not to be considered in the division of the estate. The court determined that while the husband's income was meager in 1954, and that while his records indicated a substantial loss in 1953, nevertheless, in previous years, his annual income exceeded $10,000, and that his previous earning capacity would doubtlessly be resumed. Under the order for temporary allowances for the wife pending the trial she became entitled to the sum of approximately $10,000, part of which was unpaid.

With reference to the conduct of the parties the court found:

"That on several occasions without justifiable cause defendant became violently angry toward plaintiff. That she struck him on several occasions two of such occasions being when he was driving an automobile on a public highway when he was not prepared to avoid the blow.

"That on one occasion without just cause and in a fit of anger she threatened to kill plaintiff with a butcher knife, first chasing him out of the house, then across the yard and off the premises.

"That for several years prior to the starting of the divorce proceedings the parties occupied separate sleeping rooms, and that frequently within the last year or two of such period defendant would enter the room of plaintiff after he had retired, and in a turbulent manner and without just cause berate him in a loud and angry voice, sometimes for hours. Such treatment was calculated to and did cause plaintiff to lose sleep and to become mentally upset and disturbed.

"That for several years prior to the commencement of the divorce action defendant, without just cause, carried on toward plaintiff a course of nagging and faultfinding, which included finding fault with his not being home on time for meals, and calling him over the phone at the office and finding fault with him while he was busy working with patients.

"That the foregoing acts on the part of the defendant have caused the plaintiff great shame, humiliation, and mental anguish, have affected him physically and emotionally and reduced his efficiency in the carrying on of his professional

duties, and that it is no longer safe or proper that the marriage relationship of the parties should be continued.

"In addition to a denial of cruel and inhuman treatment, defendant's answer sets forth certain conduct on the part of plaintiff which allegations are calculated to raise inferences to the effect that the plaintiff was not in a position to appeal to the equitable powers of the court. Because of their nature such allegations must be proved by a clear and satisfactory preponderance of the evidence. The record contains no such proof. Defendant's claim of misconduct on plaintiff's part, which charges were denied by the plaintiff and by Pearl Hustad, the young lady who, the defendant charged, was involved, was not sustained by the evidence. A careful examination of the testimony in the record shows nothing more than suspicions and innuendos in this respect.

"Defendant further claimed that if any acts of cruel and inhuman treatment were committed by her that they were condoned and forgiven by plaintiff as the parties lived as husband and wife and enjoyed marital relations until shortly before the commencement of the divorce action including a trip made by the parties to Atlantic City and New York City in July, 1952. The court finds that there was produced no satisfactory evidence to support such claim and especially as to marital relations between the parties on such trips to Atlantic City and New York City.

"At the trial the children of the parties appeared as witnesses for the plaintiff. It was plain that their attitude toward their mother was bitterly antagonistic. They have been living with their father, and plaintiff. They testified that it was their desire that their father have their custody. He asked that he have their custody. The court finds him a fit and proper person to have such custody."

Under provisions of the judgment an absolute divorce was decreed to the husband. The custody of the minor children was awarded to him. Payment of arrearages for temporary allowances was ordered. The plaintiff was also directed to pay an obligation of $631.21 contracted by the parties. By way of division of estate and in lieu of alimony and attorney fees there was awarded to the defendant a sum

of $40,000 with right of lien for such amount against the real estate until payment was made; household furniture of the value of $1,500 of her selection; a piano and a horse. The title to the real estate and to the residue of the personal property was awarded to the plaintiff, subject to the incumbrances.

Findings of the trial court are not to be disturbed on appeal unless they are contrary to the great weight and clear preponderance of the evidence. *Swazee v. Lee* (1951), 259 Wis. 136, 137, 47 N. W. (2d) 733. Each of the parties presented evidence with respect to the ill-treatment asserted in the pleadings. Each side also produced evidence respecting the husband's income and the valuation of the property. To set forth the detailed evidence upon which the findings of fact are based would unduly prolong this opinion and serve no useful purpose. An examination of the record reveals that in formulating its findings, the trial court carefully considered all of the evidence and construed the same in the light of basic principles that must be employed in determining whether the conduct of a spouse is cruel and inhuman under statutes entitling a divorce upon such ground.

There is no yardstick definition for cruel and inhuman treatment. Each case depends for construction on its own peculiar circumstances. ". . . parties cannot be divorced on the ground of cruelty merely because they live unhappily together from unruly tempers or marital wranglings. Married persons must submit to the ordinary consequences of human infirmities and of unwise mating, and the misconduct which will be ground for a divorce as constituting cruelty must be serious. Mere austerity of temper, petulance of manners, rudeness of language, or even occasional sallies of passion if they do not threaten bodily harm or impairment of health, do not as a general rule amount to cruelty. As has well been said, the husband and wife are bound to exercise greater efforts for removing misapprehension, allaying quarrels, smoothing the road to concord, and effecting reconciliation

than are people in other relations of life. The marriage status is not merely contractual so as to entitle each of the parties to demand the strict letter of the bond. It is a status wherein the law operates upon the weakness as well as the strength of human nature, and it will not be dissolved except for grave and substantial causes." 17 Am. Jur., Divorce and Separation, p. 179, sec. 56. However, treatment which does or is well calculated to impair the health of a party, makes the marriage state intolerable and renders a party incapable of performing his or her duties in married life, satisfies the "cruel and inhuman treatment" referred to in the statute. *Mayhew v. Mayhew* (1942), 239 Wis. 489, 1 N. W. (2d) 184; *Hiecke v. Hiecke* (1916), 163 Wis. 171, 157 N. W. 747; *Banks v. Banks* (1916), 162 Wis. 87, 155 N. W. 916; *Kohl v. Kohl* (1910), 143 Wis. 214, 125 N. W. 921; *Reinhard v. Reinhard* (1897), 96 Wis. 555, 71 N. W. 803; *Freeman v. Freeman* (1872), 31 Wis. 235.

The weight of the evidence and the credibility thereof were matters entirely within the province of the court as the trier of the facts. There is an abundance of evidence which the court was entitled to deem credible that supports the findings. It appears, too, as was said in *Stone v. Stone* (1896), 94 Wis. 28, 30, 68 N. W. 390, that "the trial judge had an opportunity of correctly determining the credibility of the witnesses and the truth of the controversy, which we do not possess." We cannot hold that the findings are contrary to the great weight and clear preponderance of the evidence.

Appellant contends that the husband condoned many acts on her part which may have entitled him to grounds for divorce. Condonation may be defined as forgiveness, express or implied, by one spouse for a breach of a marital duty by the other with the implied condition that the offense shall not be repeated. Condonation is a defense which will bar the condoning spouse of the right thereafter to seek a divorce for the condoned offense, at least until it is revived by sub-

sequent misconduct. 17 Am. Jur., Divorce and Separation, p. 248, sec. 195. The husband left the home of the parties on July 26, 1952. He commenced this action about a month later. The court found that, contrary to the wife's testimony, the parties had not lived as husband and wife and had not enjoyed marital relations until a time shortly before the commencement of the action. The parties had occupied separate sleeping rooms for years. The court found also that on the trip east, which had taken place several weeks before the separation, they had not cohabited, despite the wife's assertion to the contrary. The evidence indicates that the husband had not wanted the wife to make the trip for the reason that it would be too expensive and was to be undertaken for business purposes only. He had advised her that he would leave home upon his return if she insisted on going. There is evidence of ill-treatment on her part toward him in a church while on that trip. It appears from the findings that while the acts of violence and threats of violence perpetrated by the wife had occurred during a period sometime previous to the separation, nevertheless the acts of mental cruelty had persisted for several years immediately preceding the separation, and during which period the wife had carried on a course of nagging and faultfinding. "Acts of cruelty and harsh treatment on the part of one spouse toward the other, though condoned by the injured spouse, are revived by subsequent mistreatment . . . and may be relied on as a ground for divorce, provided the recrudescence is not provoked by the offensive conduct of the petitioner." 17 Am. Jur., Divorce and Separation, p. 260, sec. 216. In the instant situation it does not appear that the wife's latest ill-treatment of the husband before the separation had been provoked by him. The appellant contends that the husband had been planning the divorce for seven years, and had timed the commencement thereof so that the youngest child's preference to live with her father would likely be heeded by the court. There is evi-

dence indicating that several of the acts of violence, as found by the court, occurred during such seven-year period. It is considered that there was conditional forgiveness by the husband of his wife's ill-treatment in such respects. Is he, however, to be barred from procuring a divorce for the reason that he continued to live with his wife after those experiences? We think not. His grounds for divorce in regard to such acts were revived upon occurrence of the subsequent misconduct. Had the wife's ill-treatment not persisted during the last seven years before the separation, the principle of condonation may have applied. In *Cudahy v. Cudahy* (1935), 217 Wis. 355, 358, 258 N. W. 168, it was said:

"While cruel and inhuman treatment may be condoned, there is quite a difference between cruel and inhuman treatment consisting of a long succession of relatively trivial incidents, the whole pattern of which may constitute a ground for divorce, and single acts such as adultery or assault which, taken alone, may constitute grounds for divorce. By hypothesis, the conduct of defendant would not in any of its single instances constitute a ground for divorce. It was the continuity and the persistence of this conduct that ultimately gave plaintiff a cause of action. If marital intercourse or continued living together is to be treated as condonation, then a spouse who hopes for improvement in conduct, and continues marital relations in the hope that things may eventually straighten out, is, by the very act of tolerance, barred from securing a divorce. On the other hand, should the spouse, after one or two instances of such conduct, sue for divorce, he or she would be met with the argument that one or two instances of this sort do not constitute grounds for divorce. The doctrine of condonation was not intended to create such a dilemma. It has no application here. Even if it did have, it would be a conditional forgiveness and subject to the implied condition that the conduct shall not be repeated and that the cause of action shall be revived by conduct much slighter than that which preceded it. *Crichton v. Crichton,* 73 Wis. 59, 40 N. W. 638; *Hickman v. Hickman,* 188 Iowa, 697, 176 N. W. 698, 14 A. L. R. 929;

*Phillips v. Phillips,* 27 Wis. 252; *Edleman v. Edleman,* 125 Wis. 270, 104 N. W. 56; *Weichers v. Weichers,* 197 Wis. 159, 221 N. W. 733."

Appellant also contends that the husband's misconduct toward the wife during the period when they lived together is a bar to the right of a divorce on his part, and that the doctrine of recrimination applies. The husband admitted that on occasions he had vigorously taken hold of the wife's hands, and that he had put her to the floor, and that he had shaken her. He maintained that such action was necessary in his own defense. The evidence indicates that once she sustained a sprained finger and that the injury occurred as she was pulling and fighting while he held her hands in self-protection. Considering the provocation, it appears that the husband's conduct in such particulars was excusable. He did not thereby forfeit his right to a divorce. The situation is comparable to that in *Schoen v. Schoen* (1921), 175 Wis. 20, 40, 183 N. W. 876, where the court observed that in view of the attitude of the wife it was not surprising, if at times, the husband lost control of his temper and behaved in a manner inconsistent with the relations existing between husband and wife. Here, as in that case, it appears that the husband exercised great self-restraint, and that he was willing to do all that might reasonably be expected of him to restore peaceful relations.

Appellant also argues that, whether justified or not, the conduct of the husband in relation to his secretary was open to suspicion. Suspicion implies a belief or opinion as to guilt based upon facts or circumstances which do not amount to proof. 83 C. J. S., Suspicion, p. 927. Valid findings of fact may not be grounded upon suspicion. The trial court properly declined to foundation any finding of impropriety upon such consideration.

With reference to other items claimed as recriminatory, it appears that they pertain principally to the attitude and

conduct of the husband regarding the training and disciplining of the children. The wife offered evidence to the effect that the husband had encouraged the children in dishonesty. The court gave no credence to that evidence. It regarded as reliable the testimony given by the children upon the trial. We are obliged to conclude that upon the basis of the evidence which the court deemed credible, the conduct of the husband neither provoked nor justified the wife's acts of mistreatment toward him. In the absence of legal justification for denial, the evidence having established the allegations respecting cruel and inhuman treatment of the plaintiff by the defendant, the trial court properly granted a divorce to the plaintiff.

Appellant also contends that the court's disposition of property matters, alimony, and attorney fees was not justified by the evidence. We are obliged to agree with that position. The judgment does not provide for the payment of alimony. It directs a distribution of the estate in lieu of alimony. Considering particularly the history of the marital life of the parties, and their financial situation, we are firmly of the opinion that alimony ought to have been awarded.

Although the court found that the wife was capable of supporting herself, it does not appear that she has been engaged in any gainful occupation since the early years of the marriage when they were possessed of but modest means and when he was establishing his professional practice, and when she was employed and presented her earnings to him. She lived with him as his wife for twenty-six years. She bore him three children. Until the time of the separation she assumed in large part the responsibility of the care and training of the children. She kept house for the family. In recent times she managed the apartment building.

The income from her separate estate averages between $700 and $800 per year. Were she able to securely invest at four per cent the balance of the amount awarded to her after paying her legal expenses, it appears that such return would

not exceed $1,200 per year. Considering the standard of living to which she was accustomed before the separation, and which, to a reasonable extent at least, she is entitled to enjoy regardless of the divorce, it is inconceivable that she could sustain herself on an amount slightly more than $150 per month, which sum would partially include income from her separate property. In *Theis v. Theis* (1938), 196 Wash. 667, 84 Pac. (2d) 369, the court although finding that the wife, who had been married to the husband for twenty-five years, was guilty of cruel and inhuman treatment in that she had made life miserable and burdensome for the husband by her nagging and by jealousy of his children, nevertheless declared (p. 670): "But we do not think that her fault was so grievous that she should be deprived of an allowance sufficient to maintain her in the modest luxury to which she became accustomed as the wife of respondent." In the instant case the wife is entitled to an allowance from the husband that will maintain her in a condition of comfort commensurate to that which she enjoyed as the husband's wife.

We are obliged to determine that the financial provision for the wife under the judgment will not maintain her in such manner. In view of the husband's assets and his earning capacity as reflected in his spendings on the family and himself in late years, the provision directed for the wife is inadequate. The trial court observed that the husband had not only accumulated an estate the net worth of which is $112,000, but had also supported an expensive family for whom he provided every luxury and opportunity for travel. It seems to us that an ability to provide as abundantly for a family as is indicated by this record denotes the existence of substantial financial means. The evidence indicates that the husband's financial resources resulted entirely from his income. While his earnings were curtailed in the period immediately before and during the pendency of this litigation in the lower court, nevertheless, as found by the court, his net income exceeded

$10,000 annually in years prior thereto. It was also found that the husband's health had been regained, and that he was again engaging in his professional practice. There is nothing of record to indicate that his net income of $10,000-plus per year will not be resumed. In a proper case the amount of alimony may be based upon earning capacity or prospective earnings. 2 Nelson, Divorce and Annulment (2d ed.), p. 55, sec. 14.14. Citations under Note 3. It is considered that this is a proper case for such treatment. We are obliged to determine that the failure to have provided permanent alimony and a specific sum for attorney fees and suit money, constituted an abuse of discretion. When directing the entry of judgment the court stated that "the parties are in substantial agreement that the defendant should be awarded a sum out of the plaintiff's property in lieu of alimony." On this appeal the wife maintains that she had never indicated any such preference. We do not know whether the court labored under a misapprehension. We find nothing of record denoting that she had consented to such an arrangement. A careful consideration of the circumstances of these parties impels the conclusion that the wife is entitled to receive a sum of $25,000 in cash by way of division of estate; permanent alimony of $250 per month; and a contribution toward counsel fees and suit money of $5,000, in addition to the household furniture and the horse awarded under the judgment. For the reason that permanent alimony is to be awarded to the wife, we are obliged to determine that it would be unreasonable to credit the husband with the payment of alimony allowed during the period of appeal toward the interest and principal due to the wife on her share of the division of estate as directed. No such credit shall be permitted. A credit will be allowed to the plaintiff for the sums paid under the court's order for temporary alimony pending appeal toward the amount due for permanent alimony from the effective date of the judgment herein. The allowance for

attorney fees in connection with this appeal as directed by the court shall stand.

We find no abuse of discretion in the court's denial of the motion for a new trial based upon allegations of the association between the plaintiff and another woman. Nor do we find error in the court's denial of the motion for a review and modification of the judgment based on grounds of the defendant's excusable neglect because the attorney who represented her at the trial had failed in his duty to her; and for the reason that the plaintiff had committed a fraud upon the court in testifying as he did with respect to his income. The court determined that the charge of improper association was based only on suspicion and innuendo. It found that the evidence, which the wife claims her attorney neglected to submit in connection with the valuation of her own estate, was merely cumulative in nature, and would not have affected a change in the result. The court found further that the claim that a fraud had been committed upon it, rested merely on speculation, and was not sustained by clear, satisfactory, and convincing evidence. It determined that a new trial was not warranted for the reason that the attorney who represented the defendant at the trial had exercised judgment with respect to conducting the inquiry as to the husband's income which was contrary to that which the defendant now considers that the attorney ought to have exercised. The defendant is bound by the discretion which her attorney employed. She has had her day in court with respect to the consideration whereof she now complains. The orders of the court disposing of these motions are grounded upon evidence appearing of record and upon well-established legal principles and may not be disturbed.

It appears that a portion of the testimony of the witnesses Dohren and Hawley was hearsay, and that some of it was of an impeaching nature. The court directed that all of the testimony of these witnesses be stricken. Some of the testi-

mony of the witnesses Dohren and Hawley was contradictory to and tended to impeach the testimony of a witness (son of the parties) presented by the plaintiff. Proper foundation had been laid for the impeachment of certain of this witness's testimony. It was error to have stricken and disregarded such testimony. However, we cannot conclude that the elimination of that testimony was prejudicial so as to entitle the defendant to a reversal of the judgment. There is indication of record that the inclusion of such testimony would not have effectuated a change in the court's determination of the cause.

The court's memorandum decision provides that the defendant shall have thirty days after the performance of the award by the plaintiff to remove her personal effects and other property from the home. The findings and conclusions and the judgment provide that the defendant shall have thirty days following the entry of judgment in which to remove her personal property. The findings and conclusions take precedence over the memorandum decision. We perceive no error with respect to this item.

The judgment shall be modified so as to strike the provision for the payment of $40,000 to the wife as a full and final division of the estate to her, and to insert in lieu of such provision one that will direct and award to her $25,000 cash as a division of the estate; the payment of $250 per month as permanent alimony, and the payment of $5,000 in cash as a contribution toward her attorney fees and suit money incurred upon the trial, with payment as to these respective items effective as of the date of judgment. The order with respect to the payment of temporary alimony pending the appeal shall be modified so as to exclude the provision that the husband shall be entitled to a credit upon the interest or principal of the sum awarded by way of division of estate. The plaintiff is entitled to a credit for payments made under this order toward the amount due for permanent alimony as

herein directed. As to all other respects the judgment and the orders appealed from are affirmed.

*By the Court.*—The judgment appealed from is modified so as to provide for a division of estate of $25,000, the payment of alimony of $250 per month, and the payment of $5,000 to the defendant for attorney fees and suit money, with payment as to said items effective as of the date of judgment, in lieu of provision for a division of estate of $40,000 to the defendant and, as so modified, the judgment is affirmed. The orders appealed from are affirmed excepting that the order providing for the payment of temporary alimony pending this appeal shall be modified so as to provide that the plaintiff shall be entitled to no credit upon the amount adjudged as a division of estate for the defendant of any sum paid pursuant to the order for temporary alimony pending the appeal. The plaintiff is entitled to a credit toward payment for permanent alimony from the date of judgment of amounts paid under the order for temporary alimony pending appeal. Cause remanded with directions to modify the judgment and order accordingly.