NICHOLAS, Appellant, v. NICHOLAS, by Guardian *ad litem*, Respondent.

*October 4—October 29, 1963.*

For the appellant there was a brief and oral argument by *Lewis I. Cohen* of Milwaukee.

For the respondent there was a brief and oral argument by *Gerald F. Marine* of West Bend.

DIETERICH, J. The sole issue on this appeal is whether the trial court's finding that the acts of cruel and inhuman treatment committed by the defendant-respondent, Alice Nicholas, occurred at a time when she was not responsible for her conduct is contrary to the great weight and clear

preponderance of the evidence. *Heine v. Witt* (1947), 251 Wis. 157, 28 N. W. (2d) 248; *Blumenfeld v. Eichenbaum* (1959), 7 Wis. (2d) 1, 95 N. W. (2d) 754; *Barker Barrel Co. v. Fisher* (1960), 10 Wis. (2d) 197, 102 N. W. (2d) 107.

The record reveals the following facts. George and Alice Nicholas were married on September 10, 1933, at Fond du Lac, Wisconsin. George brought an action for divorce in 1948, in the circuit court for Milwaukee county, but there was a reconciliation and the case never proceeded to trial. The instant action for divorce was commenced on March 20, 1961, on grounds of cruel and inhuman treatment. George was fifty-two years of age when the action was commenced, Alice was forty-eight, and they had three children, ages twenty-eight, seventeen, and fourteen.

Alice was committed to the Winnebago state hospital on October 18, 1956, and has been an inmate of that institution continuously since that time, except for one occasion during 1957 when she received a conditional release. The complaint alleged that the acts which constituted the cruel and inhuman treatment occurred prior to Alice's commitment in 1956. The action was called for trial on May 21, 1962, at which time Alice's guardian *ad litem* asked leave of the court to withdraw the answer. The trial court then proceeded to try the action as a default. George testified as to the alleged acts constituting grounds for the divorce. The trial court, after hearing the testimony, adjourned the hearing until November 9, 1962, for the purpose of receiving further information from the guardian *ad litem* and the recommendations of the family court commissioner, so that the rights of the incompetent defendant would be adequately and properly protected. Alice had now decided to contest the divorce, and appeared in person and by her guardian *ad litem* at the trial on November 9, 1962. Before Alice took the stand, the

trial court and the family court commissioner examined her as to whether she understood the nature of the proceedings and the charges in George's complaint. The trial court then ruled that she was competent to testify.

The record further reveals that Alice has been hospitalized for mental illness several times during the past twenty years. In 1942, she spent one month at the Milwaukee county hospital for mental disorders, and received outpatient care there during 1943 and 1944. She re-entered the hospital in 1948, and was conditionally released at the end of one year. In 1953, she was again hospitalized, and after her release on this occasion she did not return until she was committed in 1956.

George testified that the alleged acts of cruel and inhuman treatment occurred prior to 1956. He stated that Alice began calling him vile and indecent names in 1934; that she threw his shoes out of the window in 1933; that beginning in 1936, she would leave home for periods up to two months without telling him where she was going; and that between 1936 and 1946, she frequently locked him out of the house when he returned from work at night. George also testified that he was forced to resign from his job in 1952, because Alice repeatedly called his employer on the telephone in the middle of the night; that she struck him and threw things at him on several occasions in 1949; that she threatened him with a fireplace poker in 1955 or 1956, and with a hammer in either 1943 or 1953, and that she swore at him in the presence of the children.

Alice testified that she threatened George on several occasions because she was afraid he was going to beat her. She said that George beat her often, and that he threw her down a flight of stairs when she was pregnant. George denied ever striking Alice. Alice stated that she never left home without George's knowledge, and that she told him she did not love him, swore at him, and threw things only

in the heat of argument. She admitted threatening George with a poker in 1956, and striking him with a cane in 1955. On cross-examination she stated that she would lock the door at night because she was afraid of being home alone, and that if George yelled, she would open the door for him. She also testified that she threw dishes, a hammer, and other household items at George, and that she would have thrown her iron as well, but she was afraid of breaking it. She could not recall when all these acts occurred, because "they were so frequent," although she stated that she threw dishes at him frequently "way back in the '40's." She admitted holding a grudge for long lengths of time after their arguments.

A letter from Dr. John T. Petersik of Oshkosh was introduced in evidence. The letter is dated February 16, 1962, and was written to Mr. L. J. Kauth, the acting family court commissioner for Washington county. Dr. Petersik stated in the letter that Alice Nicholas is suffering from a chronic mental illness and has a psychosis, which has extended over almost the last twenty years. Dr. Petersik diagnosed Alice's condition as stemming from schizophrenic reaction, paranoid type, and noted that in the past she has had many delusions of persecution, although these are not prominent at the present time. He stated, however, that many other symptoms of chronic mental illness are still present. Alice told Dr. Petersik that she could not see any future happiness with her husband, and that she had no desire to hold on to him. The doctor stated that he did not believe that a divorce would do anything to offset the improvement that she has made, but noted that "we must recognize that we are dealing here with a chronically ill individual from a mental standpoint."

The trial court, in its ruling from the bench, stated that anything occurring prior to the time of the 1948 divorce action was not properly a part of the record, and also that

many of the acts complained of took place immediately before Alice's commitment. The trial court in its findings of fact and conclusions of law found that the acts of cruel and inhuman treatment on the part of the defendant, Alice Nicholas, were either condoned, or were committed at a time when, because of her mental condition she was not responsible for her acts.

We determine that there is sufficient evidence which would sustain a finding of the trial court of the cause of cruel and inhuman treatment upon which a divorce could be adjudged, if it were not for Alice's mental condition. [1]

The letter of Dr. John T. Petersik of Oshkosh discloses his diagnosis of Alice's mental condition as schizophrenic reaction, paranoid type. The letter stated that, although Alice's symptoms were not prominent on February 16, 1962, the date the letter was written, she had many other symptoms of chronic mental illness which were still present, and that her illness and psychosis have extended over a period of almost twenty years. The record does not disclose Dr. Petersik's professional relationship to Alice. Therefore, this court will take judicial notice of the records of the department personnel office, state department of public welfare, which disclose that Dr. John T. Petersik was the superintendent and psychiatrist of the Winnebago state hospital from 1956 through 1959. The testimony of Alice and other witnesses reveals that she has been in and out of mental institutions since 1942. Therefore, on the basis of the record in the instant action the findings of the trial court are sustained by the evidence and it necessarily follows that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.

---

[1] *Gordon v. Gordon* (1955), 270 Wis. 332, 71 N. W. (2d) 386. *Caldwell v. Caldwell* (1958), 5 Wis. (2d) 146, 92 N. W. (2d) 356.