ESTATE OF NAULIN (Mick A.) : MORKIN, Executrix of the Estate of Beulah Jean Naulin, Appellant, v. CLANCY, Executor of the Estate of Mick A. Naulin and others, Respondents.

*No. 187. Argued October 4, 1972.—Decided October 31, 1972.*
(Also reported in 201 N. W. 2d 599.)

For the appellant there was a brief by *John E. Multhauf* and *Robert T. McGraw,* both of Waukesha, and oral argument by *Mr. Multhauf.*

For the respondent Charles R. Clancy, estate executor, there was a brief by *Bernstein, Wessel & Lewis* of Milwaukee, and oral argument by *John H. Wessel.*

HEFFERNAN, J. In his will, Mike Naulin stated:

"I direct that the total corpus of Trust 'A' shall equal thirty-three and one-third (33⅓%) percent of the total of my gross estate as finally determined for United States Federal Estate Tax purposes (not including therein property which does not pass under this Will), after deducting from the whole of such gross estate the total allowed as deductions for such Federal Estate Tax purposes for claims against my estate and funeral and administration expenses." (R. 17)

In addition to other lengthy testamentary clauses, the will contained the provision:

"As hereinbefore set forth, it is my intention that the value for Federal Estate Tax purposes of the property in Trust 'A,' whether passing into said Trust under this Will or otherwise, shall be available for the marital deduction allowed by the Federal Estate Tax Law applicable to my estate; all questions pertaining to this Trust shall be resolved according to this expressed intention. Furthermore, I direct that the powers of my Executor and Trustees with respect to the property in this Trust shall not be exercisable except for the purpose and in a manner consistent with this intention."

Under the terms of the will, the decedent's wife was to receive a life income from both trusts. In respect to Trust A, she was given a testamentary power of ap-

pointment. This power was exercised in favor of her estate. Upon her death, the assets of Trust B were to be distributed to named beneficiaries and to a charitable foundation. During her lifetime, the trustees were empowered to invade the corpus of both trusts to provide Beulah Jean Naulin with luxuries appropriate to her standard of living.

The will was carefully drawn for the purpose of taking advantage of the marital-deduction privileges of the federal tax law. The will amply provided for the wife during the course of her lifetime and yet limited the portion of the estate passing under the marital deduction to less than the maximum. While the exact purpose of limiting the marital deduction to one third of the estate is not spelled out in the will, we take judicial notice of the fact that the assets which pass as a marital deduction in the estate of the husband will nonetheless, to the extent that they are not consumed during the recipient's lifetime, be taxable to the estate of the surviving spouse.

The testator precisely enunciated the circumstances that would determine the monetary amount to be used in the funding of the marital trust, Trust A. While, in the abstract, it may or may not have been advantageous to so limit the funding of Trust A, we are bound by the testator's explicit directions. Where language of a will is clear and unambiguous, that language controls and there is no occasion for judicial construction. *Will of Blomdahl* (1935), 216 Wis. 590, 592, 257 N. W. 152, 258 N. W. 168; *Mitchell v. Mitchell* (1905), 126 Wis. 47, 50, 105 N. W. 216. The criteria for valuing an estate for federal tax purposes and the time of valuation are specified by law. Internal Revenue Code, secs. 2031 (a) and 2032. On this appeal, it is acknowledged by the appellants that the figure of $292,149 was properly computed as the gross estate for federal tax purposes. It is

indisputable that the express directions of the testator limited the corpus of Trust A to one third of that amount. In view of the explicit directions of the testator, there is no interpretation that could lead us to conclude that the corpus of Trust A was either to appreciate or depreciate in value during the course of the estate. The amount to be funded was a sum certain to be computed on the size of the estate for federal tax purposes.

The will provided that Trust A was to be funded first from the proceeds of any life insurance payable to the estate. If those proceeds were insufficient, the trust was to be funded from decedent's interest in certain patents and then from the stock of McNaulin, Inc., a Wisconsin corporation, in which the testator owned a substantial interest. Had the estate been funded immediately upon the valuation of the gross estate for federal tax purposes, since there was no life insurance payable to the estate and the valuation of the patent interest was $114,738, Trust A would have been wholly funded by a $97,383 interest in the patent rights. The patent rights, since they were to expire in 1975, were a diminishing asset. At the time of the distribution of the estate, the value of the patent rights had diminished to $59,364. Conversely, during the same period of time, the market value of the estate's McNaulin stock had appreciated from $122,202 to $306,010. By order of the court, Trust A was funded at the time of distribution at the current market value of the assets. It was funded to the extent of $59,364 in patent interests and $38,019 in shares of McNaulin, Inc.

Under the terms of the will, to determine the funding of Trust A, it was only necessary to value the assets required to fund Trust A and not the remainder of the estate. Trust A was not limited to receiving a corpus which was worth $97,383 at the time of the computation of estate taxes. It was entitled to assets valued at that

amount at the time of distribution. We conclude, under the plain meaning of the will, that the trial judge properly ordered the funding of Trust A with assets valued at the time when the assets were ordered to be distributed.

Sec. 231.55,[1] Stats., provides:

"**Valuation used in distribution of trust assets.** In case of a division of trust assets into 2 or more trusts or shares, any distribution or allocation of assets as an equivalent of a dollar amount fixed by formula or otherwise shall be made at current fair market values unless the governing instrument expressly provided that another value may be used. If the governing instrument requires or permits a different value to be used all assets available for distribution, including cash, shall unless otherwise expressly provided be so distributed that the assets, including cash, distributed as such an equivalent will be fairly representative of the net appreciation or depreciation in the value of the available property on the date or dates of distribution. A provision in the governing instrument that the trustee may fix values for purposes of distribution or allocation does not of itself constitute authorization to fix a value other than current fair market value."

Sec. 318.15,[2] Stats., provides a similar method and time of valuation. The valuation of assets is the current market value at the time of distribution under each statute.

Beulah Jean Naulin's executrix additionally argues that, during the course of probate, income was received by the Mike Naulin estate and that a proportional share of that income should be allocated to Trust A. The trial judge pointed out that Trust A was a demonstrative legacy of the patent royalty rights. He therefore concluded that, since there was no evidence that the general estate would be relieved from liability to fund the trust if the

---

[1] Renumbered as sec. 701.22, effective July 1, 1971.

[2] Renumbered, with minor changes, as sec. 863.19, effective April 1, 1971.

patent interest failed to be sufficient, the legacy was not a specific legacy which would entitle the trustees to the probate income on such property. However, that conclusion does not conform with the directions to executors and trustees of trusts embodied under sec. 231.40,[3] Stats., the Uniform Principal and Income Act. Sub. (3a) (c) of that Uniform Act provides:

"(c) *Disposition by executor.* The executor at the time of distribution:

"1. Shall pay over to the trustee of any trust or other legatee to whom specific property other than money is bequeathed the net probate income of such property; and

"2. Shall pay over all other net probate income to a) the trustee of any trust created out of the residue, and b) any legatee for life or years of any portion of the residue, and c) any legatee of an absolute interest in any portion of the residue, and d) any trustee of a sum of money under a trust created by the will but not payable out of the residue, in prorata shares, in accordance with the respective values of the property bequeathed or given in trust at the death of the testator as determined by the executor."

While appellant and respondent discuss at length whether the trust was formed out of the residuary estate, we are satisfied that that fact, no matter how decided, is not dispositive of whether Trust A is entitled to income during probate. We agree that sec. 231.40 (3a) (c) 1, Stats., is not applicable, since the trust was demonstrative and not a bequeathal of specific property. However, sub. (3a) (c) 2 provides that net probate income shall be paid over to the trustee of any trust created out of the residue, to any legatee for life or years of any portion of the residue, to any legatee of an absolute interest in any portion of the residue, and to any trustee of a sum of money under a trust created by will but not payable out of the residue. It thus appears from a reading of this

---

[3] Renumbered as sec. 701.20, effective July 1, 1971.

statute that the only type of a bequest not entitled to a share of probate income would be a general bequest not in trust.

9B Uniform Laws Annot., p. 576, sec. 5, incorporates a rewritten and clarifying version of the Uniform Act. The purpose of that revision is to make clear and indisputable what is actually apparent under the wording of Wisconsin's present statute that the only legatees who do not share in probate income are the legatees of pecuniary bequests not in trust. That this was the intent of the framers of the version appearing in the Wisconsin Statutes is apparent from the bill jacket on file in the Legislative Reference Library for ch. 49, Laws of 1961, which appears in the statute as sub. (3a). The bill jacket indicates that the intent of ch. 49, Laws of 1961, was to incorporate and codify the rule of *Will of Leitsch* (1924), 185 Wis. 257, 201 N. W. 284. In that case the question was posed whether the beneficiaries of life interests in trust of a trust clearly not formed from the residual estate were entitled to income from the date of the death of the testator. Reversing previous cases, the court, at page 260, cited as the proper rule the statement appearing in 2 Perry, *Trusts* (6th ed.), sec. 550, note (a) :

" 'The general rule is now well established that when property is devised or bequeathed in trust to pay the income to a person for life or for a limited time, he is entitled to either actual or equitable income from the date of the testator's death, unless the testator has indicated an intention that the enjoyment of income shall not begin until some later date.' "

Applying the rule of the *Leitsch Case,* which it was the intent of the legislative drafters of sec. 231.40 (3a) (c), Stats., to incorporate, it is apparent, both from the statute and the underlying case, that even though it were argued that Trust A was not created from the residue, nevertheless, as a bequest in trust, it is entitled to its

proportionate share of income from the date of the testator's death.

Sec. 231.40 (3a) (c) 2, Stats., governs the proportion of the net income payable to Trust A. The pro rata share is to be determined in accordance with the value of the property at the time of the death of the testator. Accordingly, Trust A is entitled to one third of the net probate income.

It is clear that some income was realized during the course of the probate which must be allocated pro rata to Trust A. However, the executor of the Mike Naulin estate contends that the payments made for the patent rights do not constitute income but were merely the recapture of a sales price. Although the trial judge in his opinion stated that there was no net probate income attributable to the specific property used to fund Trust A, it appears that he was not specifically addressing himself to the question of whether or not the payments on the patent which are denominated at other places in the record as "income" or "royalties" were income or the recapture of the original purchase price. In order to determine whether those payments constituted income as probate income is defined under sec. 231.40 (1) (b), Stats., it is necessary that the probate court specifically address itself to this question and make the finding that is appropriate to the facts. Since the original agreement by which the patents were assigned is referred to in the record but is not stated at length, this court cannot determine the nature of these payments.

Accordingly, the record must be remanded for the county court to make a specific finding in respect to the nature of the payments on the patent and for the allocation of the pro rata share of the probate income to Trust A.

That portion of the order and judgment which allocated as the corpus of Trust A one third of the value of the

estate as computed for federal estate tax purposes is affirmed; that portion of the order and judgment which failed to apportion any probate income to Trust A is reversed.

*By the Court.*—Order and judgment affirmed in part and reversed in part. The cause is remanded for further proceedings consistent with this opinion.