STATE EX REL. PELISHEK, Respondent, vs. WASHBURN, Appellant.

*November 13, 1936—February 9, 1937.*

596

*H. J. Severson* of Iola, attorney, and *Harold M. Wilkie* of Madison of counsel, for the appellant.

For the respondent there was a brief by *Eberlein & Larson* of Shawano, and oral argument by *M. G. Eberlein.*

The following opinion was filed December 8, 1936:

ROSENBERRY, C. J.   Sec. 12.14 (2), Stats., provides that every person who is a candidate for any municipal office, the annual income of which shall exceed $300, who in his own name or in the name of any other person, owns any financial interest in any newspaper or periodical circulating in part or in whole in Wisconsin, shall before any newspaper or periodical shall print any matter other than as provided in sub. (1) thereof, which is intended to influence directly or indirectly any voting or primary election, file in the office of the county clerk in which he resides a verified declaration stating definitely the newspaper or periodical in which he has any interest or control and the exact nature and extent of such interest and control.

The section further provides that any editor, manager, or other person controlling the publication who shall print or cause to be printed any such matter contrary to the provisions of this chapter, before the filing of such declaration, shall be guilty of a violation of the statute.

The demurrer of course admits the facts pleaded in the petition, from which it appears that the defendant was such a candidate and that he failed to file a statement with the county clerk as required by sec. 12.14 (2).   Sec. 12.24 (1) provides:

"If the court shall find that the candidate whose right to any office is being investigated, . . . has violated any provision of this chapter, in the conduct of the campaign for nomi-

nation or election, and if such candidate is not one mentioned in subsection (2) hereof, judgment shall be entered declaring void the election of such candidate to the office for which he was a candidate, and ousting and excluding him from such office and declaring the office vacant."

If the statute be construed literally, it must be held upon allegations of fact appearing in the complaint that the defendant was guilty of a violation of the statute, and judgment should be entered accordingly. The contention of the defendant is that it appearing from the allegations of the complaint that he had been for a long time prior to the date of the election, the editor and publisher of the paper in question, having a wide circulation in Clintonville, the fact that sec. 12.14 (2) was not complied with did not tend to affect the electors; that the filing of the required statement with the county clerk would have added nothing to the knowledge which the electorate of the city of Clintonville had by reason of the facts stated; that the will of the electors can be ascertained; and for these reasons the office held by the defendant should not be declared vacant and thus the will of the electors be defeated.

The statute is a very drastic one and contains no exceptions. For the most inconsequential violation of any provision of the statute, no matter how unimportant, if the statute be applied literally, a person elected might be ousted from office.

In reaching a decision we must again consider and interpret the provisions of sec. 5.01 (6), which is as follows:

"The words and phrases in this title [title II] shall, unless the same be inconsistent with the context, be construed as follows: . . .

"(6) This title shall be construed so as to give effect to the will of the electors, if that can be ascertained from the proceedings, notwithstanding informality or failure to comply with some of its provisions."

In this connection the history of sec. 5.01 (6) becomes important. Originally it was a part of ch. 451, Laws of 1903, which enacted the primary election law and by its terms applied only to the provisions of that chapter. The Corrupt Practices Act was created by ch. 650, Laws of 1911, and appears as ch. 8*m* of the statutes of 1911. Sec. 94–14 of that chapter is substantially the same as sec. 12.14 of the statutes of 1935, pursuant to which this proceeding is prosecuted. At the time the Corrupt Practices Act was adopted in 1911, it became a part of title II, but no change was made in the provision which related to construction. Sub. (6) originally read:

"This statute shall be liberally construed, so that the real will of the electors may not be defeated by any informality or failure to comply with all provisions of the law with respect either to the giving of any notice or the conducting of the primary or certifying the results thereof."

It is to be noted that this section as originally enacted applied only to primary elections. By ch. 381, Laws of 1915, sub. (6) was amended to read:

"This title shall be construed so as to give effect to the will of the electors, if that can be ascertained from the proceedings, notwithstanding informality or failure to comply with some of its provisions."

As already stated, at the time of the adoption of the amendment in 1915, the Corrupt Practices Act was a part of title II so that as amended sub. (6) applied not only to primary elections, but to general elections, elections of justices of the supreme court, circuit and county judges, local elections, and to all other matters relating to elections contained in title II. What is now sec. 12.24 (1) was sec. 94–32 of the statutes of 1913, so that as originally enacted sub. (6) was applicable to the provisions of sec. 12.24 (1) as it now stands in the statutes of 1935.

It is to be noted that by the provisions of sec. 12.24 (1) if the court finds that a candidate has violated any of the provisions of the chapter, the judgment shall be that the election be declared void and the office vacant. This provision becomes important in our consideration of the meaning of sub. (6) because if the office be declared vacant for any violation of the statute or failure to comply therewith, then the will of the electors, if it can be ascertained, will be thwarted. This result is forbidden by sub. (6) if as a matter of fact the will of the electors can be ascertained from an election proceeding held under title II. The drastic character of the provisions contained in ch. 12, Stats., may be accounted for by the fact that the legislature had in mind that only substantial violations such as prevented the ascertainment of the will of the electors, meaning thereby the untrammeled will of the electors, should operate to vacate the office and so defeat the will of the electors as declared by the election. This wholesale manner of modifying the provisions of ch. 12 by this single subsection makes the matter contained in title II difficult of interpretation. Difficult though the matter may be, it is our duty to interpret sub. (6) in accordance with the legislative intention.

We have already considered in prior cases the effect of sub. (6) upon the laws relating to elections. In *State ex rel. Oaks v. Brown* (1933), 211 Wis. 571, 249 N. W. 50, it was held that although statutory provisions in regard to a notice of election had not been complied with, nevertheless, in view of the facts of that case, the election was valid. It appeared in that case that the election had wide publicity, that a larger percentage of the electorate voted than customarily voted at elections, and upon consideration of the whole evidence the court concluded that under sub. (6) the will of the electors could be ascertained and despite the failure to comply with some statutory provisions relating to notice, the election was nevertheless valid.

In *Manning v. Young* (1933), 210 Wis. 588, 247 N. W. 61, it appeared that nomination papers were not filed within the statutory period. The last day of the statutory period fell on a legal holiday. The nomination papers in question were filed on the next day, and it was held that this was a sufficient compliance with the statute to entitle the name of the nominee to appear upon the ballot.

In *Commonwealth Tel. Co. v. Public Service Comm* (1935) 219 Wis. 607, 263 N. W. 665, it was held that a special election held to determine whether the city should acquire property of the privately-owned public utility was not invalid, although there was a failure to give ten days' previous notice of the special election by publication in the official city paper.

In *State ex rel. Graves v. Wiegand* (1933), 212 Wis. 286, 249 N. W. 537, the ballots were not preserved in the manner prescribed by statute. It was held that the section of the statute relating to the preservation of the ballots was made directory by the provisions of sub. (6).

In *State ex rel. Ekern v. Dammann* (1934), 215 Wis. 394, 254 N. W. 759, which involved the method of nominating candidates to be pursued by the Progressive party, sub. (6) was held to relieve those candidates from the operation of sec. 5.05 (6) (a), (b), and (c), and that as to them the statute did not apply, although the decision was also placed upon other grounds.

If there is any conflict between the provisions of sec. 12.24 (1) and sub. (6), sub. (6) must in accordance with well-known rules of construction control by reason of the fact that it was enacted subsequently to sec. 12.24, which was expressly made subject to it. It is considered, therefore, that before a judgment of ouster can be entered under the provisions of sec. 12.24 (1), there must be a finding that the act of omission or commission complained of so affected or tended to affect the mind of the electors that the real will of the electors cannot be ascertained. If the actual will of the electors can

be ascertained, then the provisions of sub. (6) become operative, and a judgment should not be entered which sets aside the will of the electors and defeats their choice for the office in question.

In the present case there are ample allegations to the effect that the matter printed in the newspaper edited and published by the defendant tended to influence the action of the voters in the municipal election in question. The statute does not forbid the publishing of matter of that kind by the editor and publisher of a paper. It requires that before such publication is made, a declaration of the candidate's relationship to the paper shall be filed in the office of the county clerk. It is because of this failure to file the notice that the statute is violated. If the notice is filed, no matter how much the matter published tends to influence the electorate, there is no violation of the statute. The question therefore is : From the allegations of the complaint, does it appear that the electorate of the city of Clintonville was so affected by the fact that the defendant did not file the required declaration that its will cannot be ascertained? There is no allegation to that effect in the complaint. On the other hand, it appears from the allegations contained in the complaint that the defendant owned a large financial interest and had control of the paper and dictated its policy; that on the day of the election and for a long time prior thereto the defendant was editor and publisher of the Dairyman Gazette which had a wide circulation in the city of Clintonville and vicinity. The sole object and purpose of requiring the defendant to make and file the statutory declaration was to apprise the public of the fact that he had an interest in the Dairyman Gazette, and might therefore have some control over matters of policy and dictate what might and might not appear in its columns. Certainly the electorate could not be affected by failure to have such notice as might be given by the filing of the declaration in the office of the

county clerk of Waupaca county when it already had a much more widely published notice of the same fact. The failure of the defendant to comply with the statutory provision could have had no effect upon the electorate, and such failure is to be disregarded under the positive provisions of the statute. The complaint therefore sets out no cause of action, because it appears from a fair inference from the facts stated that the will of the electorate can be ascertained by the election proceedings had.

If sub. (6) be not so construed and applied, there is no way to make its provisions effective. In making the provisions of sub. (6) applicable to the entire title as well as to that part of the title relating to primary elections, the legislature must have had some end in view. While the language of sub. (6) is that the title shall be construed, the provisions of sub. (6) are much more than a rule of construction. The subsection is a mandate to the judicial tribunal before whom the proceedings are pending that mere informality or failure to comply with some of the provisions of the title shall not defeat the will of the electors. It casts, therefore, upon the courts the difficult task of construction and the more difficult task of applying the statute as construed to the multitudinous situations which may arise under the election laws.

It is to be noted that the first paragraph of sec. 5.01 provides: "The words and phrases in this title, shall, unless the same be inconsistent with the context, be construed as follows:" By subs. (1) to (5) the words "primary," "September primary," "election," "November election," and "precinct" are defined. The admonition contained in the first clause of the section quite clearly relates to the application to be made of the definitions contained in subs. (1) to (5). Sub. (6) is complete in itself and to some extent repeats the language relating to construction contained in the first sentence. It provides: "This title shall be construed," etc. It is to be noted

that the language of the first sentence is "unless the same be inconsistent." It is not provided "if it be in conflict." If it so provided or were so construed the provisions of sub. (6) would be useless. The effect of sub. (6) is to relax the strict provisions of title II in all cases where the will of the electors can be ascertained from the proceedings had.

The court is well aware of the fact that many difficult questions of construction may be presented when the time comes to apply sub. (6) to the various statutory provisions contained in title II. We shall not attempt to anticipate these questions, but consider and decide them when and as they arise.

In the view which we take of the statute, the failure to make the issues of March 19, March 26, and April 2, 1936, a part of the complaint becomes unimportant. The material and necessary fact is that the failure to file the declaration as provided by statute influenced the election. The matter contained in those issues is collateral to that fact and sufficiently appears by the general allegation contained in the complaint.

*By the Court.*—The order appealed from is reversed, and the cause remanded with directions to enter an order sustaining the demurrer, and for further proceedings according to law.

A motion for a rehearing was denied, with $25 costs, on February 9, 1937.