STATE EX REL. ORVIS, Appellant, vs. EVANS, Respondent.

*October 14—November 9, 1938.*

For the appellant the cause was submitted on the briefs of *Edward J. Gehl* of Hartford, special counsel.

For the respondent there was a brief by *Corrigan & Backus* of Milwaukee, and oral argument by *Walter D. Corrigan, Sr.*

FRITZ, J.  The defendant moved to dismiss the appeal on the ground that Orvis did not furnish a cost bond as required

by sec. 274.11, Stats., relating to appeals in civil actions. Counsel for the defendant contends that Orvis had to furnish such a bond in order to perfect the appeal because of the provisions in sec. 12.24 (3), Stats., of the Corrupt Practices Act that,—

"Appeals may be taken from the determination of the court in such proceeding in the same manner as appeals may be taken as provided by law in civil actions, but the party appealing shall in no case be entitled to or obtain a stay of proceedings."

On the other hand, the special counsel appointed herein contends that the state is the party in this action, and therefore no bond is required on appeal in view of the provision in sec. 274.26, Stats., that,—

"When the state, or any state officer, or state board, in a purely official capacity, . . . shall take an appeal, service of the notice of appeal shall perfect the appeal and stay the execution or performance of the judgment or order appealed from, and no bond need be given."

In reply the defendant contends that sec. 274.26, Stats., is not applicable in an action brought in the name of the state on the relation of a private party, and in support of that contention the defendant cites *State ex rel. Hartung v. Milwaukee,* 102 Wis. 509, 512, 515, 78 N. W. 756. In that case the action was in equity to restrain the continuance of a public nuisance, and it was brought by the relator in the name of the state. But this court held that it was brought "without the presence of the proper law officer of the state," and that as it was "not an action brought by the state, but by a private party, an effective appeal could not be taken without the giving of an undertaking." That decision is not applicable to the special proceeding, and an appeal therein authorized by secs. 12.22 to 12.25, Stats. That proceeding can only be commenced upon the granting of leave to bring such a pro-

ceeding by a county judge, the attorney general, or the governor, upon a showing made to the effect and in the manner required by sec. 12.22, Stats. That section also provides that the officer granting such leave shall appoint special counsel to conduct such proceeding; and—

"If such leave be granted and such counsel appointed such elector may, by a special proceeding brought in the circuit court in the name of the state upon the relation of such elector, investigate, and said court shall determine whether or not such candidate, committee or member thereof, has violated any provision of this chapter. . . ."

Furthermore, it is provided in sec. 12.25 (2), Stats., that,—

"The special counsel provided for by this chapter shall receive a reasonable compensation for his services, not to exceed, however, . . . for the time actually spent in conducting the proceedings in the trial court or upon appeal. . . . Such compensation shall be audited by the secretary of state, and paid out of the state treasury upon a voucher and upon the certificate of the officer appointing such counsel. . . . Such compensation shall be charged to the legal expense appropriation provided in subsection (2) of section 20.08." (See margin.[1])

In view of those provisions, the special proceeding conducted by the special counsel authorized and appointed under sec.. 12.22, Stats., of the Corrupt Practices Act is clearly not an action without the presence of the proper law officer of the state. On the contrary, in view of those provisions, it must be considered a proceeding in the name of the state

---

[1] Sec. 20.08, Stats., is in relation to the appropriations to the attorney general from the general fund of the state; and sub. (2) thereof provides for the payment of compensation and expenses of special counsel appointed under sec. 14.13, Stats., by the governor and "the payment of expenses incurred by the attorney general, his deputy or assistants, in the prosecution or defense of any action or proceeding in which the state may be a party or may have an interest. . . ."

with the presence of the special counsel as the proper law officer of the state. Moreover, it is not a proceeding in which the relator seeks to vindicate a private right; but only the public right of the state to have its offices filled and held only by those legally elected or appointed thereto, and to have the powers and duties thereof exercised and performed only by those entitled to such offices. Consequently, there is applicable to that proceeding the statement made in *Income Tax Cases,* 148 Wis. 456, 500, 134 N. W. 673, 135 N. W. 164, in discussing the original jurisdiction of this court, to wit:

"The state is always the plaintiff and the only plaintiff, whether the action be brought by the attorney general, or, against his consent, on the relation of a private individual under the permission and direction of the court. It is never the private relator's suit; he is a mere incident; he brings the public injury to the attention of the court, and the court, by virtue of the power granted by the constitution, commands that the suit be brought by and for the state. The private relator may have a private interest which may be extinguished (if it be severable from the public interest), yet still the state's action proceeds to vindicate the public right." See also *State ex rel. Martin v. Ekern,* 228 Wis. 645, 280 N. W. 393.

It is therefore our conclusion that in view of sec. 274.26, Stats., no bond was necessary to perfect the appeal herein.

So far as material to the other contentions considered herein, the jury found that Evans made disbursements and incurred obligations in excess of $960 (which as one third of the first year's salary of the office in question was the maximum permissible under sec. 12.20 (1), Stats.); that he made disbursements for and distributed mirrors and match containers with political advertising printed thereon; that he failed to include the disbursements for that merchandise in the financial statement filed by him with the county clerk;

but that none of those acts or omissions was "of such a material nature that it affected or tended to affect the minds of some of the electors in casting their ballots to fill the office for which Evans was a candidate;" and that those acts or omissions did not "so affect . . . the minds of the electors, that the real will of the electors cannot now be ascertained." In passing on the motions after verdict the court did not set aside any of the jury's findings, but granted the defendant's motion for judgment on the verdict and the dismissal of the complaint upon the merits. From the judgment entered accordingly, this appeal was taken.

On this appeal the appellant contends that upon the facts, as found by the jury, that Evans made disbursements and incurred obligations in excess of the maximum amount permissible under sec. 12.20 (1), Stats., and illegally made disbursements for mirrors and match containers and distributed them in violation of secs. 12.06 and 12.07 (3), Stats. 1935, and failed to include his disbursements therefor in the financial statements which he was required to file by sec. 12.09, Stats., judgment should have been entered under sec. 12.24 (1), Stats., declaring the election void and ousting and excluding him from the office, regardless of whether or not any of the acts or omissions constituting such violations affected or tended to affect the minds of the electors in casting their ballots, or so affected or tended to affect their minds that the real will of the electors cannot be ascertained.

Although there is some conflict in the evidence bearing upon the jury's finding that the disbursements made and the obligations incurred by the defendant exceeded the permissible maximum of $960, and the defendant has noticed a motion for review of the court's rulings in failing to find to the contrary, the jury's other findings,—unchallenged on this appeal,—that the defendant made disbursements for and distributed mirrors and match containers with political

advertising printed thereon, and that he failed to include his disbursements therefor in the financial statements which sec. 12.09, Stats., required him to file must here be considered a verity. That disbursements for those purposes were included within the inhibitions of the Corrupt Practices Act is obvious, in view of the definition of the term "disbursement" in sec. 12.01 (3), Stats. 1935, to wit:

"The term 'disbursement' shall mean and include every act by or through which any money, *property, including all matches or match containers* of whatever kind or nature, whether there is political advertising thereupon or not, office or position or other thing of value passes or is directly or indirectly conveyed, given, provided, paid, expended, promised, pledged, contributed or lent, and also any money, property, office or position or other thing of value so given, provided, paid, expended, promised, pledged, contributed or lent."

The defendant's disbursements for and the distribution of such property for political purposes were clearly in wilful violation of sec. 12.06, Stats., which provides that no candidate shall make any disbursement for political purposes except for certain purposes specified in that section, none of which can be considered to include a disbursement for such merchandise or property. And the fact that he wilfully omitted his disbursements of a substantial sum for such property in his certified financial statements, filed under sec. 12.09, Stats., emphasizes the wilful character of his violation of sec. 12.06, Stats. That violation was clearly within the letter and scope of, and rendered the defendant subject to the consequences prescribed by, the provisions in secs. 12.24 (1) and 12.28 (1), Stats. 1935, which read:

"If the court shall find that the candidate whose right to any office is being investigated, . . . *has violated any provision* of this chapter, in the conduct of the campaign for nomination or election, . . . judgment shall be entered declaring void the election of such candidate to the office for

which he was a candidate, and ousting and excluding him from such office and declaring the office vacant." (Sec. 12.24 (1), Stats.)

"If the successful candidate for any office . . . shall, in a criminal action, be adjudged guilty of any violation of this chapter committed during his candidacy or election, the court shall, after entering such judgment, enter a supplemental judgment declaring a forfeiture of the defendant's right to the office." (Sec. 12.28 (1), Stats.)

In passing upon the Corrupt Practices Act this court said in *State ex rel. Schumacher v. Markham*, 160 Wis. 431, 437, 152 N. W. 161,—

"The aim of the statute is to require the aspirant for office to resort to honest means to get it. . . . The violation of the statute goes to the right to hold office, just as does a question of eligibility or of failure to secure a majority of the votes. . . ."

And subsequently in *State ex rel. La Follette v. Kohler*, 200 Wis. 518, 554, 228 N. W. 895, the court said,—

"What the statute in effect does is to create a conclusive presumption that a violation of the statute chargeable to the person receiving the highest number of votes renders his election void because the result was achieved by practices declared by the statute to be corrupt and illegal."

Nevertheless, the defendant contends that in view of (1) the provision in sec. 5.01 (6), Stats., in title II, Stats., relating to "Elections," that,—

"This title shall be construed so as to give effect to the will of the electors, if that can be ascertained from the proceedings, notwithstanding informality or failure to comply with some of its provisions;"

and (2) the construction given to that provision and the material provisions of the Corrupt Practices Act in *State ex rel. Pelishek v. Washburn*, 223 Wis. 595, 270 N. W. 541, and *State ex rel. Hampel v. Mitten*, 227 Wis. 598, 278 N. W. 431; and (3) the fact that in the election 8,876 votes

were cast for the defendant Evans as against 5,436 for his opponent, the will of the electorate was not frustrated and cannot be defeated by the small illegal expenditures for matches and mirrors, and the other minor violations complained of. Therefore, the defendant contends that because the jury found and the court apparently approved the findings that the violations in question did not affect or tend to affect the minds of the electors in casting their ballots, or affect or tend to affect their minds so that the real will of the electors cannot be ascertained, the violations in question are immaterial and do not warrant adjudicating the election void and the ousting and excluding of the defendant from the office. Support for those contentions is afforded to some extent by the statements in *State ex rel. Pelishek v. Washburn, supra,* that,—

"If there is any conflict between the provisions of sec. 12.24 (1) and sub. (6) [of sec. 5.01], sub. (6) must in accordance with well-known rules of construction control by reason of the fact that it was enacted subsequently to sec. 12.24, which was expressly made subject to it. It is considered, therefore, that before a judgment of ouster can be entered under the provisions of sec. 12.24 (1), there must be a finding that the act of omission or commission complained of so affected or tended to affect the mind of the electors that the real will of the electors cannot be ascertained. If the actual will of the electors can be ascertained, then the provisions of sub. (6) become operative, and a judgment should not be entered which sets aside the will of the electors and defeats their choice for the office in question" (p. 601).

"The subsection [(6), sec. 5.01] is a mandate to the judicial tribunal before whom the proceedings are pending that mere informality or failure to comply with some of the provisions of the title shall not defeat the will of the electors" (p. 603).

"The drastic character of the provisions contained in ch. 12, Stats., may be accounted for by the fact that the legislature had in mind that only substantial violations such as prevented the ascertainment of the will of the electors, meaning

thereby the untrammeled will of the electors, should operate to vacate the office and so defeat the will of the electors as declared by the election" (p. 600).

In commenting on that statement in *State ex rel. Hampel v. Mitten, supra,* we said that it "furnishes the true key to the rule of this case;" and that,—

"From a careful study of the Corrupt Practices Act and of sec. 5.01 (6), Stats., in their relation to each other, it is our conclusion that the purpose of sec. 5.01 (6) was to require the court, in spite of the literal meaning of the Corrupt Practices Act, so to construe it as to deny ouster in all cases where the violations were either technical, insubstantial, or trivial, or where from the very nature of the violation the minds of the electors could neither have been corrupted nor misled, as where the violation consisted of a mere omission to perform some prescribed act which was ancillary or auxiliary to the main purpose of the law, but which, of itself, could have no tendency to influence or affect the minds of the electors. When in the *Pelishek Case* it was said that in order to support an ouster the violation must be so substantial as to prevent ascertainment of the will of the electors, it was intended to hold that a deliberate, wilful, intentional, and substantial violation of the act which upon its face has a natural tendency to influence voters makes it impossible to ascertain the true will of the electors and carries with it the penalty of ouster. In no other way can a sensible meaning be given to the act. A literal compliance with the act would result in defeating the will of the electors because of insubstantial oversights on the part of candidates, technical violations which could have had no effect upon the result of the election and which are sufficiently deterred by the prescribed penalties other than ouster" (p. 605).

But then, in the sentences which immediately follow, we added,—

"To hold, however, that in every case where definitely corrupt or vicious methods have been deliberately used a straw vote must be taken or an elaborate investigation made to find out precisely what effect these tactics had upon the outcome of the election would be to make the act impossible of execu-

tion and render it nugatory for all practical purposes. A construction that denies the remedy of ouster in cases of insubstantial or technical violations that could not have affected the result, and at the same time enforces ouster in the case of deliberate and substantial violations, carries into effect the spirit and intent of the act without making it a trap for the innocent but unwary candidate. This seems to have been the basis upon which other corrupt practice statutes have been deliberately drafted."

Thus, we then recognized that it would "make the act impossible of execution and render it nugatory for all practical purposes" to hold that "in every case where definitely corrupt or vicious methods have been deliberately used" it would nevertheless be necessary to make an elaborate investigation to find out precisely what effect those tactics had upon the outcome of the election. In the case at bar the defendant's disbursements for and distribution of the mirrors and match containers and his failure to list those disbursements in his certified financial reports were obviously deliberate, intentional, and direct violations of the act. As disbursements for such property as match containers and mirrors to be used for political purposes were clearly within the inhibition of sec. 12.06, Stats., and it was certainly within the province of the legislature to consider the use and distribution of such property for political purposes a corrupt and vicious method that would probably improperly affect or at least tend to affect the minds of the voters to such an extent that their real will could not be ascertained, there is no room to hold that illegal disbursements and the use of such merchandise for such purposes are but insubstantial or trivial. It would manifestly defeat the legislative intent and purpose to hold that his violations in that respect were of no material or of but indefinite consequence, or that a determination as to the consequences thereof depends upon the outcome of an investigation and the finding by a judicial tribunal as to what effect the prohibited tactics had upon the

outcome of the election. And the fact that the violator, after deliberately engaging in such definite violations, received a substantial majority of the votes cast certainly does not justify the conclusion that his violation had not affected or tended to affect the minds of the voters to such an extent that the real will of the electorate was defeated. If such a conclusion were warranted, then on that theory, if there had been a greater majority in favor of the violator after violations of even greater extent and corrupt influence, there would be even less occasion for holding that the real will of the electorate had been defeated by the illegal practices. That would obviously be absurd.

It follows that in view of the express terms of the act, the defendant's illegal disbursements for the mirrors and match containers and his distribution thereof for political purposes cannot be held to have been but insubstantial or trivial and inconsequential violations thereof. Consequently, because of those violations, judgment should have been entered declaring the election void and ousting and excluding the defendant from the office in question and declaring it vacant as is prescribed for such violations by the mandatory provisions in sec. 12.24 (1), Stats. As it is not necessary in reaching that conclusion to take into consideration the jury's findings that the defendant's disbursements and obligations incurred were in excess of $960, or that the relator instituted this proceeding in good faith, there is no occasion to pass upon the defendant's notice to review the court's rulings in respect to the jury's findings on either of those matters.

*By the Court.*—Judgment reversed, and the cause remanded with directions to enter judgment declaring the election in question void, and ousting and excluding the defendant, David M. Evans, from the office in question, and declaring said office vacant, in accordance with the provisions of sec. 12.24 (1), Stats.