STATE EX REL. SKIBINSKI, Appellant, v. TADYCH, Respondent.

*May 9—June 7, 1966.*

For the appellant there was a brief and oral argument by *Howard H. Koppa* of Milwaukee.

For the respondent there was a brief by *Nicholas C. Catania,* attorney, and *Albert R. Tadych* of counsel, both of Milwaukee, and oral argument by *Mr. Catania.*

HALLOWS, J. At the time of the primary election in 1964 the plaintiff was the incumbent supervisor of the 12th district of Milwaukee county. The defendant and two other candidates opposed him and the plaintiff polled 2,085 votes and the defendant, who was runner-up candidate, polled 1,168. In the runoff election the following month the defendant received 3,157 votes and the plaintiff 2,889, and as a result the defendant was elected county supervisor. During the campaign a number of handbills were circulated in the 12th district by the defendant and on his behalf. Six statements in these handbills and an oral statement by the defendant are the basis of this ouster action.

To constitute a violation of the Corrupt Practices Act, sec. 12.17, Stats., it is necessary that the statements concerning a candidate be false, knowingly made or published, and be intended or tend to affect the voting at

an election. They must be statements of fact, not conclusions or opinions. *State ex rel. Hampel v. Mitten* (1938), 227 Wis. 598, 278 N. W. 431; *State ex rel. Mattison v. Baudhuin* (1955), 270 Wis. 249, 70 N. W. (2d) 674. A violation of sec. 12.17 to constitute the basis of an ouster from office under sec. 12.24, must be deliberate, wilful and substantial. The remedy of ouster is not available for insubstantial or technical violations which would not affect the result of the election, nor is the law intended to be a trap for the innocent or unwary candidate. *State ex rel. Hampel v. Mitten, supra; State ex rel. Pelishek v. Washburn* (1937), 223 Wis. 595, 270 N. W. 541; *State ex rel. Orvis v. Evans* (1938), 229 Wis. 304, 282 N. W. 14; *State ex rel. Mattison v. Baudhuin, supra.* Sec. 12.24, dealing with forfeiture of office, is a severe remedy and provides that if a candidate for any office has violated the provisions of the Corrupt Practices Act, ch. 12, Stats., in the conduct of his campaign for nomination or election and, if the candidate is not a member of the legislature or Congress, the court shall enter judgment declaring his election void, ousting and excluding him from such office and declaring it vacant.

Six statements appearing in various handbills and one oral statement are claimed to be false in fact and attributable to the defendant. In reviewing these claims we must examine the evidence in the light most favorable to the plaintiff and draw all reasonable inferences in his favor since the dismissal was against him. In this respect, there is no difference between an involuntary nonsuit and a motion to dismiss on the grounds the plaintiff failed to establish a *prima facie* case. In both, the sufficiency of the evidence is at issue. *Lee v. Milwaukee Gas Light Co.* (1963), 20 Wis. (2d) 333, 122 N. W. (2d) 374; *Schoenfeldt v. Babcock* (1965), 26 Wis. (2d) 569, 133 N. W. (2d) 262; *Bartz v. Braun* (1961), 14 Wis. (2d) 425, 427, 111 N. W. (2d) 431.

It is claimed the following is a false statement of fact, "During the past year, 1963, *Skibinski WASTED $1,506.46* of the *TAXPAYER'S* hard earned *MONEY, in one year alone*, traveling about the country, attending various conventions, and in general *HAVING A GOOD TIME* at the taxpayers expense." The evidence establishes Skibinski actually spent that amount of money on conventions during 1963. Whether he wasted the money or whether the amount was hard earned by the taxpayers or whether he had a good time seems to us not to be statements of fact but to fall within the field of conclusions, comment and opinion.

The handbill also contained the following statement which is claimed to be a false misstatement of fact, "At the present time the *12th District* is the *'laughing stock'* of the *County* because of the fact its Supervisor is missing half the time having a 'good time' at conventions at the taxpayers expense." This statement too falls within the realm of opinion and comment. Certainly the characterization "laughing stock of the County" is not to be taken literally, nor is the plaintiff directly accused of being absent from the meetings of the board of supervisors half of the time. The plaintiff argues this statement is false because it charges him with absence from his job half of the time when his attendance record at the county-board meetings was 95 percent, not 50 percent. But the plaintiff's interpretation of the statement is not reasonable. The emphasis is the plaintiff spent too much time having a good time at conventions. Attending meetings of the board of supervisors is only part of the duties of the supervisor.

The same handbill stated, *"SKIBINSKI* is a *LEADER* of a *GROUP urging the passage of NEGRO HOUSING LAWS* for the State of Wisconsin which would *force* South Side *property owners* and others to *rent their property to Negroes*. If the property owners were *found guilty* of violating any of the provisions of this proposed

law, they could be *fined* up to *$500.00* or imprisoned up to *6 months, or both."* The plaintiff argues this statement is false because he is not the leader of any group which urged the passage of Negro-housing laws. After some confusion in the testimony of the plaintiff, he testified he was a member of the parish unit of the Christian Family Movement and also a member of the Catholic Family Life Program and that during 1963 he was southeastern chairman of the latter group. He testified the two groups were related and he was aware that the Christian Family Movement was interested in and supported fair-occupancy or open-housing laws and indirectly knew that such bills were pending before the Wisconsin legislature in 1963. The plaintiff contends he was not a leader of the group and the group did not lobby for Negro-housing laws which were different than open-housing laws.

It is plain from the evidence that during the 1963 legislature Bill No. 49, A., was introduced which prohibited discrimination in the sale of housing and in providing public accommodations. This bill was known variously as the "open occupancy bill," the "Amos and Andy bill," and as a "Negro housing bill." It is likewise clear the Christian Family Movement was in favor of the open-occupancy or housing bill and against discrimination. We think this statement is sufficiently founded in fact not to be a false statement. The plaintiff puts a too narrow construction upon the statement in order to prove its falsity. An officer of a group is often called its leader and a group may urge the passage of a bill without lobbying.

During the campaign certain handbills were distributed under the caption of "The 12th Ward Voters Guide." Apparently four issues of this so-called voters guide were distributed. From the evidence it is a fair inference this guide may be properly attributed to the defendant and the defendant distributed some of the

handbills. It is not unknown in a political campaign for a candidate or a group supporting a candidate to publish literature as a "voter's guide" which purports to be a disinterested authority and source of information but whose real identity is conspicuous by its absence.

In one of the issues, the plaintiff's travels were itemized. Seven trips are shown and the total cost of each for the year 1963. The voters guide then makes this statement, "The above costs of *'SKIBINSKI'S TRAVELS,'* in the *amount of $1,506.46 are for one year alone.* Now Skibinski has been traveling to conventions in this manner for the last four years. Consequently, if you multiply the $1,506.46 spent by Skibinski last year, by 4, the number of years that he has been in office, you arrive at an amount in excess of $6,000.00 squandered by Skibinski in traveling about the country to conventions." It is claimed this statement is false because the plaintiff did not spend $6,000 in traveling about the country to conventions during his four-year term of office and also because he did not squander any money. This statement must be read with the itemization which appears preceding it. It is true the impression is attempted to be created that if the plaintiff spent this amount of money in each of the four years he would have squandered $6,000. Whether $1,500 or $6,000 was squandered is a question of opinion of what constitutes squandering. Furthermore, the statement is not a categorical statement of fact that Skibinski did in fact spend $6,000 in traveling during his four-year term.

The third edition of the voters guide contained the caption, "SKIBINSKI GROUP WANTS NEGRO HOUSING LAWS FOR SOUTH SIDE" and the fourth edition, *"Skibinski* Group *FOR* Negro Housing Laws For South Side." It is claimed these are false statements of fact because there was no group wanting or for Negro-housing laws which bore Skibinski's name and because no housing laws were aimed at the south side of Milwau-

kee. The proposed laws would have prevented discrimination in such areas where it was practiced. If, as the defendant's statement indicates, the south side practiced discrimination against Negroes, then it is true that the fair-housing laws would apply to the south side. However, we do not think the statement can bear the construction the housing laws were restricted solely to Negroes and to the south side of Milwaukee. Nor does the statement imply the group bore the name "Skibinski" but rather that the plaintiff was identified with such a group. Here again, we think the plaintiff takes a too narrow meaning of the words used.

The last statement complained of was orally made to various voters by the defendant outside an election-polling place on election day and was to the effect that "Skibinski is for Negro housing." It is claimed this statement is false because the appellant never wrote a letter to any legislator supporting any Negro legislation, never asked anyone to vote in favor of open-occupancy or fair-housing laws and did not lobby for such legislation. The statement refers to what the plaintiff stands for—his beliefs—not that he actively lobbied for pending legislation. Nowhere in the record does the plaintiff state he is not for a fair-housing law and it would be difficult for him to make such a statement and be consistent in his position as a local officer in the Christian Family Movement. He could well believe in and be for equal housing for Negroes without lobbying for such a bill. His evidence of his position falls short of proving the statement false.

An open-housing law could not very well be an issue in the 12th district for the office of supervisor. The defendant's literature and statement on this somewhat false issue was an appeal to prejudice and bigotry. Such tactics are not to be condoned even in the elective process; however, we cannot find such tactics are forbidden by sec. 12.17, Stats., which is restricted to pre-

serving the integrity of an election from false statements. Consequently, it is with some reluctance we hold this statement and those of similar import made as an appeal to bigotry and prejudice did not violate the Corrupt Practices Act.

During the trial, the court refused to allow the plaintiff to call the defendant as an adverse witness. It is argued this action was prejudicial error but it is recognized that *State ex rel. Schumacher v. Markham* (1916), 162 Wis. 55, 155 N. W. 917, is authority for the proposition that an ouster proceeding under ch. 12, Stats., is in its nature criminal to the extent that the defendant cannot be compelled to be a witness against himself. We are asked to overrule *Schumacher* on the theory an ouster proceeding is civil in nature. This case relied on the previous case of *State ex rel. Schumacher v. Markham* (1915), 160 Wis. 431, 152 N. W. 161, and was cited with approval in *State ex rel. La Follette v. Kohler* (1930), 200 Wis. 518, 228 N. W. 895, which specifically stated a person charged with a violation of the Corrupt Practices Act may not be compelled to give evidence against himself. Moreover, we think these cases correctly decided this point.

Lastly, it is argued by the plaintiff the trial court committed prejudicial error in failing to make specific findings of fact and conclusions of law after it granted the defendant's motion to dismiss the plaintiff's complaint. It is argued sec. 270.33, Stats., requires the trial court to make specific findings and conclusions of law and the failure to do so was prejudicial error because this court on appeal cannot properly review the trial court's ruling. In *Kamuchey v. Trzesniewski* (1959), 8 Wis. (2d) 94, 98 N. W. (2d) 403, we stated the requirement of sec. 270.33 to make findings of fact and conclusions of law was directive but strongly recommended strict compliance with the section as a great help to the litigants and to this court.

When there is a failure to make findings of fact and conclusions of law, this court on appeal may adopt one of three courses: (1) Affirm the judgment if clearly supported by the preponderance of the evidence, (2) reverse if not so supported, or (3) remand for the making of findings and conclusions. *Wallis v. First Nat. Bank* (1914), 155 Wis. 533, 145 N. W. 195. As recent as *Grimh v. Western Fire Ins. Co.* (1958), 5 Wis. (2d) 84, 92 N. W. (2d) 259, we stated the lack of findings was not necessarily reversible error and this court could affirm if the examination of the evidence shows the trial court reached a result which the evidence would sustain if a specific finding supporting that result had been found.

A dismissal of a complaint on the ground of insufficiency of the evidence requires findings to be made under sec. 270.33, Stats., and that section has been so construed even though a literal reading thereof might indicate to some that findings and conclusions need only be made when there is a dispute in the evidence. *Roush v. Battin* (1947), 252 Wis. 8, 30 N. W. (2d) 453; *Yahr v. Joint School Dist. No. 2* (1898), 99 Wis. 281, 74 N. W. 779; *Jansen v. Huerth* (1910), 143 Wis. 363, 127 N. W. 945. The defendant cites *In re Henry S. Cooper, Inc.* (1942), 240 Wis. 377, 2 N. W. (2d) 866, for the proposition that sec. 270.33 does not apply to special proceedings such as this. See also *Gill v. Milwaukee & Lake Winnebago R. Co.* (1890), 76 Wis. 293, 45 N. W. 23, and *United Parcel Service v. Public Service Comm.* (1942), 240 Wis. 603, 4 N. W. (2d) 138, 5 N. W. (2d) 635. However, we pointed out in *Spies v. Peterson* (1956), 271 Wis. 505, 74 N. W. (2d) 148, that since *Cooper* was decided, amendments were enacted to harmonize the provisions relating to special proceedings with those which relate to actions, and findings are now required in special proceedings. Sec. 270.33 was also amended by ch. 37, sec. 6, Laws of 1963, to except there-

from actions and proceedings under ch. 299 which relate to procedure in county courts in small-claim-type actions. This amendment clearly implies special proceedings are within the call of the section.

In dismissing the complaint, the trial court stated the question of proof "revolves itself upon one particular point, that is the credibility of witnesses." Prejudicial error is claimed because it is impossible in the record to find what witnesses the trial court did not believe in arriving at its conclusion the evidence was insufficient to make a *prima facie* case. However, we do not believe that failure of the trial court to make findings is prejudicial because accepting all the evidence as being credible, we still find it insufficient to prove the material falsity of the complained-of statements.

*By the Court.*—Order affirmed.