WALBER, Respondent, v. WALBER, Appellant.*

*No. 146. Argued October 1, 1968.—Decided October 29, 1968.*
(Also reported in 161 N. W. 2d 898.)

---

* Motion for rehearing denied, with costs, on February 4, 1969.

314

For the appellant there was a brief and oral argument by *James J. Koenen* of Port Washington, attorney, and *Roland J. Steinle, Jr.,* of Milwaukee of counsel.

For the respondent there was a brief by *David Rabinovitz* of Sheboygan, attorney, and *Theodore S. Fins* of Milwaukee of counsel, and oral argument by *Mr. Rabinovitz.*

HALLOWS, C. J. The parties were married in October of 1949. At the time of trial in 1967 the plaintiff was fifty-nine and the defendant seventy-seven years of age. Prior to her marriage to the defendant, the plaintiff was a widow and had received property upon the death of her husband. Her assets consisted of personal property which had been appraised at $13,500, an interest in a farm subject to a $6,500 mortgage, and a parcel of real estate in Sheboygan which was later sold to pay the mortgage on the farm. The defendant previously had been married three times. Both parties had issue from their former marriages but there were no children from the present marriage.

Shortly after the marriage, the parties moved to the wife's farm which they worked until 1953. However, in March of 1950 the farm was mortgaged for $6,000 and the proceeds used to pay the plaintiff's children's share of their inheritance and to purchase a thresher. At this time the defendant became a joint tenant with the plaintiff of the farm. In March of 1953 the personal property was sold at a farm auction and netted approximately $8,500. A month later the farm was sold for $20,000 on a land contract, which provided for a $2,000 down payment, monthly payments of $75, and the assumption of the mortgage which then amounted to $3,000. The defendant used the $2,000 down payment to make a down payment on a home in Belgium, the title to which he took solely in his own name. From 1953 until November of 1966 the defendant collected the $75 monthly payment on the land contract and kept it for his own use. This amounted to the sum of $4,500.

In its findings, the trial court found the proceeds of the sale of personal property on the farm and the $2,000 down payment were traceable to the purchase of the home in Belgium. The trial court also found the plaintiff had been previously ordered to pay $650 for the defendant's attorney's fees and motion costs at a time when the defendant had assets of his own to pay those items. As a result, the court found the plaintiff's separate estate at the time of the divorce to consist of the land contract, an equity of approximately $10,500 in the home, $4,500 the defendant collected from the land contract and the $650 expense, or a total of approximately $25,600. The court found the defendant's assets and what he had under his control to be: The home in Belgium, the one-half interest in the land contract, $4,000 check in a bank lockbox; $4,000 bank certificate; $2,000 cashier's check held by defendant's attorney; 25 shares of Plymouth Equity ($25 per share) held jointly with plaintiff; two shares of Plymouth Equity in his own name; and one-half interest in $700 worth of household goods purchased after the purchase of the home.

In making the division of property, the court granted the plaintiff $2,000 in lieu of alimony and attempted to restore her separate estate to her. The court required the defendant to pay the sum of $3,031.13, being the net amount of the plaintiff's money converted by the defendant, to convey to the plaintiff all his interest in the land contract, in the home and in the furniture and appliances therein, and to transfer to the plaintiff 12 and ½ shares of the Plymouth Equity. The judgment was later amended to provide that the title to the real estate interests be vested in the plaintiff.

Upon this appeal, the defendant raises three grounds for reversal: (1) The findings of fact are insufficient, (2) the evidence is insufficient to support the granting of the divorce, and (3) the division of property was erroneous and unjust.

In its findings, the court made no finding of facts constituting cruel and inhuman treatment, but in its conclusions of law there is a conclusion that the divorce was granted the plaintiff on this ground. While there are preliminary questions raised of waiver, we pass them and reach the question of whether the absence of the finding calls for reversal on the part of this court. In *State ex rel. Skibinski v. Tadych* (1966), 31 Wis. 2d 189, 142 N. W. 2d 838, we stated the familiar rule that a trial court's failure to find a fact is not necessarily reversible error although sec. 270.33, Stats., requires that the court, upon a trial of an issue of fact to it, shall state separately the facts found and the conclusions of law thereon. We pointed out in *Skibinski* that when there is a failure to make a finding of fact, this court on appeal may adopt one of three courses: (1) Affirm the judgment if clearly supported by the preponderance of the evidence, (2) reverse if not so supported, or (3) remand for the making of findings and conclusions. *See also Kamuchey v. Trzesniewski* (1959), 8 Wis. 2d 94, 98 N. W. 2d 403; *Forest Home Dodge, Inc. v. Karns* (1965), 29 Wis. 2d 78, 138 N. W. 2d 214.

In cases involving family law, it is especially helpful to this court that adequate findings of fact are made. A trial court's duty only extends to finding ultimate facts upon which a judgment rests, *Finkelstein v. Chicago & N. W. Ry.* (1935), 217 Wis. 433, 259 N. W. 254, and there is no exception in the statute for divorce cases; nevertheless, more specific findings should be made upon request of counsel. In contested domestic relations and family-law cases we are inclined to take the third alternative and remand the case for the making of additional findings. However, the trial judge who tried this case is no longer on the bench and to send the case back would require a completely new trial, which we do not consider justified.

We do not reach the issue that the acts of physical violence must be rejected because barred by the statute of limitations and we ignore such evidence. Other evidence which exceeded the scope of the pleadings, which were not amended to conform to the proof, may be considered. The contention of the defendant is not that the admissibility of this evidence is error but that the pleadings were not amended and therefore the trial court could not consider the evidence. This court may consider evidence beyond the scope of the pleadings since we can deem the pleadings to be amended to conform to the proof. *Wulfers v. E. W. Clark Motor Co.* (1922), 177 Wis. 497, 188 N. W. 652; *Klaus v. Klaus* (1916), 162 Wis. 549, 156 N. W. 963; *see also Zelof v. Capital City Transfer, Inc.* (1966), 29 Wis. 2d 384, 139 N. W. 2d 1; *Lisowski v. Chenenoff* (1968), 37 Wis. 2d 610, 155 N. W. 2d 619.

In considering the sufficiency of the evidence, we do so on the test that the plaintiff has the burden of proving cruel and inhuman treatment by a fair preponderance of the evidence and the appellate test of whether the judgment is contrary to the great weight and clear preponderance of the evidence is not applicable. We think the evidence sufficient to support a divorce on the ground of cruel and inhuman treatment.

Mrs. Walber testified her husband would not discuss any of the financial matters with her and when she asked to discuss them he would tell her to "shut-up," "don't talk so dumb or . . . I wouldn't know what he was talking about and . . . if I wouldn't like it I should go." This in spite of the fact the financial matters involved her separate assets which he was in the process of taking over. She never received any money from him and he, in fact, converted her money. She testified he rarely took her out socially and when he did he would walk away or tell people she never worked; that he bossed her around while she painted the house alone; that

he never bought her any clothes and rarely bought her a Christmas or birthday present; that he always hollered at her and never talked decent. He was always unkind to her children and grandchildren; that this conduct continued through her married life. She further testified the defendant's conduct caused her to become nervous and upset and she did not become well again until after she left him.

The plaintiff's daughter testified on behalf of the plaintiff. She corroborated her mother's story. She also testified that defendant burned her son's hand to teach him a lesson while they were visiting the plaintiff at the home in Belgium; that defendant never talked to plaintiff decently and would say she never worked.

The defendant testified and denied or could not recall the incidents testified to by plaintiff. He testified the plaintiff always argued about money, threatened infidelity, gave him the silent treatment for three or four weeks, and would not take care of him when he was ill. Defendant's only testimony as to the effect of plaintiff's conduct on his health was: "It's the worse thing, what bothered me I never trusted because she always talked about poison there sitting by herself." The defendant's son also testified. His testimony was that he would visit plaintiff and defendant and nothing out of the ordinary appeared.

In *Heffernan v. Heffernan* (1965), 27 Wis. 2d 307, 134 N. W. 2d 439, this court stressed the importance of the totality of conduct and the detrimental effect it had on the marital relationships and the health of the complaining spouse. We pointed out the conduct of the offending spouse must be unreasonable and unwarranted. Likewise, we recognized the view expressed in *Gordon v. Gordon* (1955), 270 Wis. 332, 71 N. W. 2d 386, that there was no yardstick definition for cruel and inhuman treatment and each case depended upon its own peculiar facts. It was also pointed out that people cannot be

divorced on the ground of cruelty merely because they lived unhappily together and there existed some unruly tempers and marital wranglings. People must recognize the marital status and the stability of the family are of grave and substantial concern to the state and a certain amount of irritating consequences of human infirmities must be accepted and endured.

However, the facts in this case go beyond what can be accepted for the denial of a divorce. We find defendant's conduct was unreasonable and unwarranted and exceeded what should be the normal relationship and treatment of a wife by her husband. His course of conduct evidenced a lack of respect for the plaintiff as a human being and he disregarded her rights to her own property. This conduct adversely affected the health of the plaintiff. The conduct viewed as a whole and as a continuous source of harm constitutes cruel and inhuman treatment. *See Cudahy v. Cudahy* (1935), 217 Wis. 355, 258 N. W. 168.

It is claimed there was no finding in reference to the defendant's counterclaim. This is true but we now find the defendant has not proved a cause of action because there is no evidence that the acts of the plaintiff, if true, had any material adverse effect upon the defendant's health. The defendant argues this court should apply the doctrine of recrimination and deny the plaintiff a divorce. The question of whether this court should apply the doctrine of recrimination is not before us. There is no foundation for the application of the doctrine because we have found the defendant is not entitled to a divorce.

In making the division of property, the trial court found the defendant husband obtained part of the plaintiff's separate estate by misrepresentation. It is argued that the division is based on erroneous determination of the plaintiff's wealth at the time of marriage and the

division results in a punishment to the defendant. We find no error on the part of the trial court. It restored to the plaintiff wife her separate property which over a period of years the defendant had taken from her. Regardless of how the title to the property was held at the time of the divorce, there is no evidence the plaintiff made any valid gifts of her separate estate to the defendant. In fact, the evidence is that she did not intend to make any gift to the defendant and did not realize she had conveyed any interest in her property to him. It was the defendant who had the acquiring intent and the grasping hand.

We think the ten-year limitation imposed by sec. 247.03 (2), Stats., is not applicable to a division of property in a divorce action. And we see no reason why sec. 893.19 (7), the six-year limitation on the discovery of fraud, is necessarily applicable to these facts. The labor which the defendant performed on the farm was not a capital contribution but in the nature of the discharge of his legal obligation to support his wife. *See* *Strandberg v. Strandberg* (1967), 33 Wis. 2d 204, 147 N. W. 2d 349. We find no error in the determination of value of the assets by the court. The plaintiff has received only a small amount of property out of the defendant's property in lieu of alimony and there are no grounds for arguing the defendant was punished.

*By the Court.*—Judgment affirmed.

ROBERT W. HANSEN, J. (*dissenting*). A trial court judgment rests upon the court's findings as to the essential facts upon which the judgment is based. The judgment itself is the superstructure. The findings of fact are the foundation upon which the structure rests.

In the case before us, as the majority opinion points out, the trial court made no findings of fact as to the acts constituting cruel and inhuman treatment. The

judgment is there, but there is no foundation of fact findings to support it. The court majority elects to correct such omission by now constructing a factual foundation to support the judgment. It is, of course, possible to thus build a basement under a completed building, but there are several reasons why, in this case, a foundation should not have been built at the appellate level for a foundationless judgment.

Certain of the evidence offered by the plaintiff at the time of trial clearly was too remote in time to be properly considered.[1] Since there are no findings of fact, it is not possible to learn whether such more than a decade-old incidents were relied upon by the trial court in reaching its conclusions of law and judgment. The court majority states that this issue is not reached because, in its constructing a foundation to hold up the judgment ". . . we ignore such evidence." Such ignoring does not remove the probability that the trial court did rely in part upon such time-banned testimony, nor even of the possibility that it relied entirely upon such testimony.

Not only is a foundation provided, but the specifications of plaintiff's complaint are now altered to fit the new foundation. On this appeal, the defendant complains that ". . . the evidence adduced in support of plaintiff's cause of action went beyond the pleadings and no effort was made to conform the pleadings to the proof." Once again, it is not possible to determine, in the absence of findings of fact, how heavily the trial court, if it did so at all, relied upon evidence that clearly did go beyond the scope of the pleadings. To the contention that the trial court could not properly rely upon such outside-the-pleadings evidence, the majority opinion now responds that it can consider such evidence ". . . since we

[1] Sec. 247.03 (2), Stats., provides that an action for divorce ". . . shall be commenced within 10 years after the cause of action arose . . . ."

can deem the pleadings to be amended to conform to the proof." So we have the pleadings amended as well as the foundation furnished by the appellate court on review. This becomes a major construction project indeed. The defendant contended that the trial court's action was based upon evidence that went beyond the then unamended pleadings. Is this contention well answered by now changing the pleadings so that a new structure will now fit upon a new foundation now constructed?

The majority opinion not only does a construction job for the case of the plaintiff, but also a demolition job on the case of the defendant. Nowhere in the decision of the trial court is there any reference to the counterclaim of the defendant. In a contested action, with complaint, answer and counterclaim before the court, it would seem elementary that the judgment must deal with and dispose of both the complaint and counterclaim. To rule on one and not the other is an exactly half-finished job. This is particularly true in an action for divorce where, if it appears from the evidence that both parties have been guilty of misconduct sufficiently grave to constitute cause for divorce, a decree of absolute divorce may not be granted to either plaintiff or defendant.[2] The majority opinion bulldozes the counterclaim out of the picture by finding, although the trial court did not so find, that the acts of the plaintiff, if true, had no "material adverse effect" upon defendant's health. This gives the defendant the only ruling on his claim long after the trial in which he presented them. This becomes a dismissal of a counterclaim which cannot be

---

[2] Sec. 247.101, Stats. "The equitable doctrine that the court shall not aid a wrongdoer is applicable to any party suing for divorce under s. 247.07 (1) to (5), except that where it appears from the evidence that both parties have been guilty of misconduct sufficiently grave to constitute cause for divorce, the court may in its discretion grant a judgment of legal separation to the party whose equities on the whole are found to be superior."

reviewed because it is the reviewing court that did the dismissing.

We do not quarrel with the general proposition that a trial court's failure to find a fact is not necessarily reversible error, although it is one thing to add a missing brick and something else to supply all four supporting foundation walls. It is the willingness to do so complete a foundation-providing job in a case involving marriage and the family that we find ill-advised. The majority opinion comments that "In cases involving family law, it is especially helpful to this court that adequate findings of fact be made." That ought not be the important consideration. More than the convenience of a reviewing court requires that a divorce judgment entered without findings of fact should be held to be fatally defective. Litigants and society in general are entitled to definite findings as to all essential facts. Nor is it enough to suggest to trial courts in this state, as the majority opinion does, that ". . . more specific findings should be made *upon request of counsel.*" Nine out of ten divorce actions in this and other states are default or substantially uncontested lawsuits, at least insofar as the granting of the divorce is concerned. There are overpowering reasons of sound public policy for requiring that in every divorce action, contested or uncontested, specific findings as to essential facts must be made before a divorce decree is granted, and, in this state, that is the clear mandate of the Wisconsin Family Code. (Chs. 245 to 247, Wis. Stats.)

To dispel any doubt about what they were doing and why they were doing it, the Wisconsin legislators started off their recodification and reconstruction of the domestic relations laws of this state with the following declaration of purpose:

"It is the intent of chs. 245 to 248 to promote the stability and best interests of marriage and the family. Marriage is the institution that is the foundation of the

family and of society. Its stability is basic to morality and civilization, and of vital interest to society and the state. The consequences of the marriage contract are more significant to society than those of other contracts, and the public interest must be taken into account always. . . . The impairment or dissolution of the marriage relation generally results in injury to the public wholly apart from the effect upon the parties immediately concerned." [3]

This firm declaration of public policy makes it clear that a divorce action in Wisconsin does not just involve the plaintiff and defendant. It affects society, and, therefore, ". . . the public interest must be taken into account always." It is not alone the defendant who was entitled to definite findings as to essential facts. The public is entitled to such findings. Both the spirit and letter of the Wisconsin Family Code require that a court finding of essential facts accompany and support a decree of divorce in this state.

While in this case there was a complied with demand for a bill of particulars, the Wisconsin statutes provide generally that, short of such demand, in actions for divorce or legal separation:

". . . the complaint or counterclaim shall state the statutory ground for the action without detailing allegations which constitute the basis for such ground." [4]

This insistence upon a nonitemized or bland complaint serves the useful public purpose of softening the adversary nature of divorce proceedings in the initial stages. However, the very absence of particulars in the complaint makes it more important than otherwise that the court's judgment be based upon essential facts definitely found and clearly stated. To permit trial level courts to do no more than make a conclusion of law as to the grounds, with no finding of facts, would be an

---

[3] Sec. 245.001 (2), Stats.
[4] Sec. 247.085 (2), Stats.

open invitation to the granting of divorce decrees on the flimsiest of proof and the shakiest of testimony, particularly in default cases. The public, as well as the parties, is entitled to know the facts upon which the court based its judgment of divorce.

This case was an opportunity for this court to unequivocally state that findings of fact, as well as conclusions of law, must be made before a judgment of divorce can be entered and decree of divorce can be granted. Sadly enough, that opportunity has been missed. I would have reversed and remanded for a new trial.

I am authorized to state that Mr. Justice BRUCE BEILFUSS joins in this dissent.

